**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| SEAN PRIEWE, Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>            v.<br><br>BIGBEAR.AI HOLDINGS, INC., LOUIS R. BROTHERS, AMANDA LONG, KEVIN MCALEENAN, JOSHUA KINLEY, and JULIE A. PEFFER,<br><br>                              Defendants. | **Case No.**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Sean Priewe ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding BigBear.ai Holdings, Inc. ("BigBear" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired BigBear securities between March 31, 2022 and March 25, 2025, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      BigBear is an artificial intelligence ("AI")-driven technology solutions company. The Company purportedly offers national security, supply chain management, and digital identity and biometrics solutions.

3.      In June 2021, BigBear.ai Holdings entered into a merger agreement (the "Merger Agreement") with GigCapital4, Inc. ("GigCapital4"), a special purpose acquisition company ("SPAC")[1], GigCapital4 Merger Sub Corporation ("Merger Sub"), and BBAI Ultimate Holdings. Pursuant to the Merger Agreement, Merger Sub first merged with and into BigBear.ai Holdings, with BigBear.ai Holdings being the surviving entity in the merger (the "First Merger").  Then, immediately following the First Merger, BigBear.ai Holdings merged with and into GigCapital4, with GigCapital4 being the surviving entity in the merger (the "Second Merger," and together with the First Merger, the "Mergers," and together with the other transactions contemplated by the Merger Agreement, the "Business Combination").  On December 7, 2021, the Mergers were consummated and GigCapital4, Inc. was renamed as BigBear.ai Holdings, Inc.

---

[1] A SPAC, also called a blank-check company, is a development stage company that has no specific business plan or purpose or has indicated that its business plan is to engage in a merger or acquisition with an unidentified company or companies, other entity, or person.

4.     Upon completion of the Business Combination, BigBear issued $200 million of unsecured convertible notes—debt instruments that can be converted into equity at a future date—due to mature on December 15, 2026 (the "2026 Convertible Notes" or "2026 Notes").  The 2026 Convertible Notes bear interest at a rate of 6.0% per annum, payable semi-annually, and not including any interest payments that are settled with the issuance of shares, and were convertible into 17,391,304 shares of the Company's common stock at an initial Conversion Price of $11.50. Convertible notes are often classified as long-term debt and as such, consistent with generally accepted accounting principles ("GAAP"), they must be accounted for in a company's quarterly and annual reports as liabilities until they reach maturity, at which point they either convert to equity or are repaid as principal and interest.

5.     BigBear uses the Financial Accounting Standards Board's Accounting Standards Codification ("ASC")—the single source of U.S. GAAP—to account "for all transactions and events in which it obtains control over one or more other businesses (even if less than 100% ownership is acquired), to recognize the fair value of all assets and liabilities assumed and to establish the acquisition date fair value as of the measurement date."  Accordingly, because the Business Combination qualified as such a transaction, BigBear was required to account for it, and its issuance of the 2026 Convertible Notes therewith, in accordance with the ASC.

6.     Under ASC 815-15, an entity is required to bifurcate and separately account for a feature or derivative embedded within a host contract (such as the conversion option within the 2026 Convertible Notes) if: (1) the economic characteristics and risks of the embedded derivative are not clearly and closely related to the economic characteristics of the host contract; (2) the hybrid instrument is not remeasured at fair value under otherwise applicable GAAP with changes in fair value reported in earnings as they occur; and (3) a separate freestanding instrument with the

same terms as the embedded derivative would meet the definition of a derivative and would not qualify for a "derivative scope exception." An embedded derivative may qualify for a scope exception if, for example, it meets the requirements of ASC 815-40, which covers contracts issued or held by an entity that are both indexed to its own stock[2] and classified in stockholders' equity in its statement of financial position. If an embedded feature qualifies for a derivative scope exception, the entity does not separate it from the host contract and the entity accounts for the entire instrument (assuming no other embedded features require bifurcation) in accordance with other U.S. GAAP. Therefore, whether BigBear was required to bifurcate the conversion option within the 2026 Convertible Notes as a derivative was dependent, in part, upon the conversion option's qualification for a derivative scope exception.

7.    Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) BigBear maintained deficient accounting review policies related to the reporting and disclosure of certain non-routine, unusual, or complex transactions; (ii) as a result, the Company incorrectly determined that the conversion option within the 2026 Convertible Notes qualified for the derivative scope exception under ASC 815-40 and failed to bifurcate the conversion option as required by ASC 815-15; (iii) accordingly, BigBear had improperly accounted for the 2026 Convertible Notes; (iv) the foregoing error caused BigBear to misstate various items in several of the Company's previously issued financial statements; (v) as a result, these financial statements were inaccurate

---

[2] Under ASC 815-40, an instrument (or embedded feature) is considered indexed to an entity's own stock if its settlement amount will equal the difference between the fair value of a fixed number of the entity's equity shares and a fixed monetary amount or a fixed amount of a debt instrument issued by the entity (the "fixed-for-fixed" rule).

and would likely need to be restated; (vi) BigBear would require extra time and expense to correct the inaccurate financial statements, thereby increasing the risk that the Company would be unable to timely file certain financial reports with the SEC; and (vii) as a result, the Company's public statements were materially false and misleading at all relevant times.

8.      On March 18, 2025, BigBear disclosed in a filing with the SEC that certain of the Company's financial statements since fiscal year 2021 should no longer be relied upon and would be restated.  Specifically, management identified a material error in the previously reported financial statements related to the accounting treatment of the Company's 2026 Convertible Notes. In addition, BigBear revealed that, as a result of the foregoing, the Company would be unable to timely file its Annual Report for 2024 (the "2024 10-K") "without unreasonable effort or expense."

9.      On this news, BigBear's stock price fell $0.52 per share, or 14.9%, to close at $2.97 per share on March 18, 2025.

10.      Then, post-market on March 25, 2025, BigBear filed its 2024 10-K.  In discussing the error in the previously reported financial statements, the 2024 10-K stated, in relevant part, that a "conversion option embedded within the 2026 Notes was incorrectly deemed to be eligible for a scope exception from the bifurcation requirements of ASC 815-15 and therefore requires bifurcation as a derivative ('*2026 Notes Conversion Option*')" and that "[t]he 2026 Notes include certain adjustments to the conversion rate that violate the 'fixed-for-fixed' criteria described in [ASC] 815-40."  As a result, the consolidated financial statements were restated "to reflect the issuance of the 2026 Notes Conversion Option at fair value as of December 7, 2021 and the subsequent remeasurement to fair value at each reporting date."  The 2024 10-K further revealed that the adjustments reflected in the restatements related to, among other items, accumulated deficit, derivative liabilities, deferred tax liabilities, net loss, interest expense, and amortization of

debt issuance discount.  Finally, the 2024 10-K disclosed that the Company had identified a material weakness in its internal control over financial reporting—specifically, that BigBear had not "consistently executed [its] technical accounting review policies, inclusive of the application of certain interpretations subject to significant judgement or differences in interpretation, at a precision level sufficient to achieve complete, accurate and timely financial accounting, reporting and disclosures of certain non-routine, unusual, or complex transactions."

11.    On this news, BigBear's stock price fell $0.32 per share, or 9.11%, to close at $3.19 per share on March 26, 2025.

12.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

13.    The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

14.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

15.    Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  BigBear is headquartered in this Judicial District, Defendants conduct business in this Judicial District, and a significant portion of Defendants' actions took place within this Judicial District.

16.    In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited

to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

17.    Plaintiff, as set forth in the attached Certification, acquired BigBear securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

18.    Defendant BigBear is a Delaware corporation with principal executive offices located at 7950 Jones Branch Drive, 1st Floor North Tower, McLean, Virginia 22102.  BigBear's common stock trades in an efficient market on the New York Stock Exchange ("NYSE") under the ticker symbol "BBAI".

19.    Defendant Louis R. Brothers ("Brothers") served as BigBear's Chief Executive Officer ("CEO") from prior to the start of the Class Period until October 2022.

20.    Defendant Amanda Long ("Long") served as BigBear's CEO from October 2022 until January 2025.

21.    Defendant Kevin McAleenan ("McAleenan") has served as BigBear's CEO since January 2025.

22.    Defendant Joshua Kinley ("Kinley") served as BigBear's Chief Financial Officer ("CFO") from prior to the start of the Class Period until June 2022.

23.    Defendant Julie A. Peffer ("Peffer") has served as BigBear's CFO since June 2022.

24.    Defendants Brothers, Long, McAleenan, Kinley, and Peffer are sometimes referred to herein as the "Individual Defendants."

25.    The Individual Defendants possessed the power and authority to control the contents of BigBear's SEC filings, press releases, and other market communications.   The

Individual Defendants were provided with copies of BigBear's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with BigBear, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

26.    BigBear and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

27.    BigBear is an AI-driven technology solutions company. The Company purportedly offers national security, supply chain management, and digital identity and biometrics solutions.

28.    In June 2021, BigBear.ai Holdings entered into the Merger Agreement and, on December 7, 2021, the Mergers were consummated. Upon completion of the remaining transactions that comprised the Business Combination, BigBear issued the 2026 Convertible Notes.

29.    BigBear uses the ASC to account "for all transactions and events in which it obtains control over one or more other businesses (even if less than 100% ownership is acquired), to recognize the fair value of all assets and liabilities assumed and to establish the acquisition date fair value as of the measurement date." Accordingly, because the Business Combination qualified

as such a transaction, BigBear was required to account for it, and its issuance of the 2026 Convertible Notes therewith, in accordance with the ASC.

## **Materially False and Misleading Statements Issued During the Class Period**

30.    The Class Period begins on March 31, 2022, when BigBear filed an Annual Report on Form 10-K with the SEC, reporting the Company's financial and operational results for the year ended December 31, 2021 (the "2021 10-K").  In providing a summary of the Company's significant accounting policies, the 2021 10-K stated, in relevant part, that "[t]he consolidated financial statements ***have been prepared in accordance with accounting principles generally accepted in the United States of America ("GAAP")***."  Further, in its consolidated balance sheet, the Company reported a "[t]otal stockholders' equity (deficit)" figure of $122,368,000 as of December 31, 2021.[3]

31.    In addition, in discussing the Company's disclosure controls and procedures, the 2021 10-K stated, in relevant part:

> Our management, with the participation of our principal executive officer and principal financial officer, evaluated the effectiveness of our disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) as of the end of the period covered by this Annual Report on Form 10-K, and have concluded that, ***based on such evaluation, our disclosure controls and procedures were effective as of December 31, 2021 at the reasonable assurance level to ensure that information required to be disclosed by us in the reports that we file or submit under the Exchange Act is recorded, processed, summarized and reported within the time periods specified in the SEC's rules and forms***, and is accumulated and communicated to our management, including our principal executive and principal financial officers, or persons performing similar functions, as appropriate, to allow timely decisions regarding required disclosure.

32.    Appended to the 2021 10-K as exhibits were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Brothers and Kinley, attesting that "[t]he

---

[3] All emphases included herein are added unless otherwise indicated.

information contained in the [2021 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

33.    On May 12, 2022, BigBear filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operational results for the quarter ended March 31, 2022 (the "Q1 2022 10-Q").  The Q1 2022 10-Q contained a substantively similar description of the Company's purported utilization of GAAP in preparing its financial statements and the effectiveness of its disclosure controls and procedures as discussed, *supra*, in ¶¶ 30-31.

34.    Appended to the Q1 2022 10-Q as exhibits were signed certifications pursuant to SOX by Defendants Brothers and Kinley, attesting that "[t]he information contained in the [Q1 2022 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

35.    On August 12, 2022, BigBear filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operational results for the quarter ended June 30, 2022 (the "Q2 2022 10-Q").  The Q2 2022 10-Q contained a substantively similar description of the Company's purported utilization of GAAP in preparing its financial statements and the effectiveness of its disclosure controls and procedures as discussed, *supra*, in ¶¶ 30-31.

36.    Appended to the Q2 2022 10-Q as exhibits were signed certifications pursuant to SOX by Defendants Brothers and Peffer, attesting that "[t]he information contained in the [Q2 2022 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

37.    On November 10, 2022, BigBear filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operational results for the quarter ended September 30, 2022 (the "Q3 2022 10-Q").  The Q3 2022 10-Q contained a substantively similar description

10

of the Company's purported utilization of GAAP in preparing its financial statements and the effectiveness of its disclosure controls and procedures as discussed, *supra*, in ¶ ¶¶ 30-31.

38.     Appended to the Q3 2022 10-Q as exhibits were signed certifications pursuant to SOX by Defendants Long and Peffer, attesting that "[t]he information contained in the [Q3 2022 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

39.     On March 31, 2023, BigBear filed an Annual Report on Form 10-K with the SEC, reporting the Company's financial and operational results for the year ended December 31, 2022 (the "2022 10-K"). The 2022 10-K contained a substantively similar description of the Company's purported utilization of GAAP in preparing its financial statements as discussed, *supra*, in ¶ 30.

40.     In addition, BigBear reported an amortization of debt issuance costs figure of $2,302,000, a "[d]eferred income tax (benefit) expense" figure of $1,757,000, and a "[n]et increase (decrease) in fair value of derivatives" figure of $1,591,000 on its consolidated statement of cash flows for the year ended December 31, 2022.

41.     Appended to the 2022 10-K as exhibits were signed certifications pursuant to SOX by Defendants Long and Peffer, attesting that "[t]he information contained in the [2022 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

42.     On May 15, 2023, BigBear filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operational results for the quarter ended March 31, 2023 (the "Q1 2023 10-Q"). The Q1 2023 10-Q contained a substantively similar description of the Company's purported utilization of GAAP in preparing its financial statements as discussed, *supra*, in ¶ 30.

43.     In addition, in the Q1 2023 10-Q, BigBear reported a derivative liabilities figure of $25,469,000 on its consolidated balance sheet as of March 31, 2023.  Further, for the three months ended March 31, 2023, the Company reported an interest expense figure of $3,556,000, a "[n]et increase (decrease) in fair value of derivatives" figure of $10,567,000, and a net loss of $26,214,000 on its consolidated statement of operations, and an amortization of debt issuance costs figure of $500,000 on its consolidated statement of cash flows.

44.     Appended to the Q1 2023 10-Q as exhibits were signed certifications pursuant to SOX by Defendants Long and Peffer, attesting that "[t]he information contained in the [Q1 2023 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

45.     On August 10, 2023, BigBear filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operational results for the quarter ended June 30, 2023 (the "Q2 2023 10-Q").  The Q2 2023 10-Q contained a substantively similar description of the Company's purported utilization of GAAP in preparing its financial statements as discussed, *supra*, in ¶ 30.

46.     In addition, in the Q2 2023 10-Q, BigBear reported a derivative liabilities figure of $44,126,000 on its consolidated balance sheet as of June 30, 2023.  Further, on its consolidated statement of operations, the Company reported an interest expense figure of $3,560,000 for Q2 2023 and $7,116,000 for the six months ended June 30, 2023, and a net loss of $16,895,000 for Q2 2023 and $43,109,000 for the six months ended June 30, 2023.  Finally, on its consolidated statement of cash flows, BigBear reported an amortization of debt issuance costs figure of $1,006,000 and a "[n]et increase (decrease) in fair value of derivatives" figure of $13,688,000 for the six months ended June 30, 2023.

47.     Appended to the Q2 2023 10-Q as exhibits were signed certifications pursuant to SOX by Defendants Long and Peffer, attesting that "[t]he information contained in the [Q2 2023 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

48.     On November 9, 2023, BigBear filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operational results for the quarter ended September 30, 2023 (the "Q3 2023 10-Q").  The Q3 2023 10-Q contained a substantively similar description of the Company's purported utilization of GAAP in preparing its financial statements as discussed, *supra*, in ¶ 30.

49.     In addition, in the Q3 2023 10-Q, BigBear reported a derivative liabilities figure of $28,467,000 on its consolidated balance sheet as of September 30, 2023.  Further, on its consolidated statement of operations, the Company reported an interest expense figure of $3,540,000 for Q3 2023 and $10,656,000 for the nine months ended September 30, 2023, and a net loss of $39,110,000 for the nine months ended September 30, 2023.  Finally, on its consolidated statement of cash flows, BigBear reported an amortization of debt issuance costs figure of $1,512,000 for the nine months ended September 30, 2023.

50.     Appended to the Q3 2023 10-Q as exhibits were signed certifications pursuant to SOX by Defendants Long and Peffer, attesting that "[t]he information contained in the [Q3 2023 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

51.     On March 7, 2024, BigBear issued a press release announcing the Company's Q4 2024 results.  The press release reported an interest expense figure of $3,544,000 and a net loss of $21,256,000 for the three months ended December 31, 2023.

52.     On March 15, 2024, BigBear filed an Annual Report on Form 10-K with the SEC, reporting the Company's financial and operational results for the year ended December 31, 2023 (the "2023 10-K"). The 2023 10-K contained a substantively similar description of the Company's purported utilization of GAAP in preparing its financial statements and the effectiveness of its disclosure controls and procedures as discussed, *supra*, in ¶¶ 30-31.

53.     In addition, in the 2023 10-K, BigBear reported a derivative liabilities figure of $37,862,000 on its consolidated balance sheet as of December 31, 2023. Further, for the year ended December 31, 2023, the Company reported an interest expense figure of $14,200,000 and a net loss of $60,366,000 on its consolidated statement of operations, and an amortization of debt issuance costs figure of $2,018,000, and a "[d]eferred income tax (benefit) expense" figure of $88,000 on its consolidated statement of cash flows.

54.     Appended to the 2023 10-K as exhibits were signed certifications pursuant to SOX by Defendants Long and Peffer, attesting that "[t]he information contained in the [2023 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

55.     On May 10, 2024, BigBear filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operational results for the quarter ended March 31, 2024 (the "Q1 2024 10-Q"). The Q1 2024 10-Q contained a substantively similar description of the Company's purported utilization of GAAP in preparing its financial statements and the effectiveness of its disclosure controls and procedures as discussed, *supra*, in ¶¶ 30-31.

56.     In addition, in the Q1 2024 10-Q, BigBear reported a derivative liabilities figure of $24,956,000 and a "[t]otal stockholders' equity (deficit)" figure of $108,482,000 on its consolidated balance sheet as of March 31, 2024. Further, for the three months ended March 31,

2024, the Company reported an interest expense figure of $3,555,000 and a net loss of $125,147,000 on its consolidated statement of operations, and an amortization of debt issuance costs figure of $506,000 on its consolidated statement of cash flows.

57.     Appended to the Q1 2024 10-Q as exhibits were signed certifications pursuant to SOX by Defendants Long and Peffer, attesting that "[t]he information contained in the [Q1 2024 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

58.     On August 9, 2024, BigBear filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operational results for the quarter ended June 30, 2024 (the "Q2 2024 10-Q").  The Q2 2024 10-Q contained a substantively similar description of the Company's purported utilization of GAAP in preparing its financial statements and the effectiveness of its disclosure controls and procedures as discussed, *supra*, in ¶¶ 30-31.

59.     In addition, in the Q2 2024 10-Q, BigBear reported a derivative liabilities figure of $17,074,000 and a "[t]otal stockholders' equity (deficit)" figure of $102,756,000 on its consolidated balance sheet as of June 30, 2024.  Further, on its consolidated statement of operations, the Company reported an interest expense figure of $3,551,000 for Q2 2024 and $7,106,000 for the six months ended June 30, 2024, a "[n]et increase (decrease) in fair value of derivatives" figure of $7,882,000 for Q2 2024, and a net loss of $11,737,000 for Q2 2024 and $136,884,000 for the six months ended June 30, 2024.  Finally, on its consolidated statement of cash flows, BigBear reported an amortization of debt issuance costs figure of $1,012,000 for the six months ended June 30, 2024.

60.     Appended to the Q2 2024 10-Q as exhibits were signed certifications pursuant to SOX by Defendants Long and Peffer, attesting that "[t]he information contained in the [Q2 2024

10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

61.    On November 7, 2024, BigBear filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operational results for the quarter ended September 30, 2024 (the "Q3 2024 10-Q"). The Q3 2024 10-Q contained a substantively similar description of the Company's purported utilization of GAAP in preparing its financial statements and the effectiveness of its disclosure controls and procedures as discussed, *supra*, in ¶¶ 30-31.

62.    In addition, in the Q3 2024 10-Q, BigBear reported a derivative liabilities figure of $15,796,000 and a "[t]otal stockholders' equity (deficit)" figure of $98,433,000 on its consolidated balance sheet as of September 30, 2024. Further, for the nine months ended September 2024, the Company reported an interest expense figure of $10,647,000 and a net loss of $149,060,000 on its consolidated statement of operations, and an amortization of debt issuance costs figure of $1,517,000 on its consolidated statement of cash flows.

63.    Appended to the Q3 2024 10-Q as exhibits were signed certifications pursuant to SOX by Defendants Long and Peffer, attesting that "[t]he information contained in the [Q3 2024 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

64.    The statements referenced in ¶¶ 30-63 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) BigBear maintained deficient accounting review policies related to the reporting and disclosure of certain non-routine, unusual, or complex transactions; (ii) as a result, the Company incorrectly determined

that the conversion option within the 2026 Convertible Notes qualified for the derivative scope exception under ASC 815-40 and failed to bifurcate the conversion option as required by ASC 815-15; (iii) accordingly, BigBear had improperly accounted for the 2026 Convertible Notes; (iv) the foregoing error caused BigBear to misstate various items in several of the Company's previously issued financial statements; (v) as a result, these financial statements were inaccurate and would likely need to be restated; (vi) BigBear would require extra time and expense to correct the inaccurate financial statements, thereby increasing the risk that the Company would be unable to timely file certain financial reports with the SEC; and (vii) as a result, the Company's public statements were materially false and misleading at all relevant times.

### The Truth Emerges

65.     On March 18, 2025, BigBear disclosed in a filing on Form 8-K with the SEC that certain of BigBear's financial statements since fiscal year 2021 should no longer be relied upon and would be restated.  Specifically, the Company stated, in relevant part:

> On March 17, 2025, the Company's Board of Directors (the "Board"), after discussion with the Audit Committee of the Board (the "Audit Committee") and with management of the Company and, following the Company's dialogue with the Company's independent registered public accounting firm, Grant Thornton LLP ("Grant Thornton"), concluded that the Company will need to restate its audited consolidated financial statements for the fiscal years ended December 31, 2022 and 2023 and the interim unaudited consolidated financial statements for each quarterly period in 2023 and in 2024 (collectively, the "Prior Financial Statements") and that the Prior Financial Statements, as well as the Company's audited consolidated financial statements for the fiscal year ended December 31, 2021, should no longer be relied upon for the reasons described below.

> In connection with the financial statements to be included in the Company's Annual Report on Form 10-K for the fiscal year ended December 31, 2024 (the "2024 Financial Statements") and, as part of the review of the accounting treatment of the Company's convertible secured notes issued in December 2024 (the "2029 Notes"), the Company, together with Grant Thornton LLP ("Grant Thornton"), the Company's independent auditors, reevaluated the accounting presentation of the Company's convertible notes due in 2026 (the "2026 Notes"), specifically, the accounting for the embedded conversion option. The Company and Grant Thornton

had previously concluded that the embedded conversion option did not need to be accounted for as a derivative separate from the 2026 Notes, which was consistently reflected across all of the Company's historical financial statements. The Company requires additional time to complete valuations necessary to determine the impact on the Company's historical financial statements and to disclose the impact reflective of this change as of and for the fiscal year ended December 31, 2024. In addition, the change in position on the interpretation and application of the accounting guidance will also result in the Company's restatement of the Prior Financial Statements.

66.     That same day, BigBear disclosed in a separate filing with the SEC that, as a result of the additional time needed to correct its previously issued financial statements, the Company would be unable to timely file the 2024 10-K "without unreasonable effort or expense."

67.     On this news, BigBear's stock price fell $0.52 per share, or 14.9%, to close at $2.97 per share on March 18, 2025.

68.     Then, post-market on March 25, 2025, BigBear filed its 2024 10-K.  In discussing the error in the previously reported financial statements, the 2024 10-K stated, in relevant part, that:

> [F]or the period ended December 31, 2024, management identified a material error in the previously reported financial statements related to its convertible notes issued in December 2021 and due in December 2026 ("2026 Notes"). The conversion option embedded within the 2026 Notes was incorrectly deemed to be eligible for a scope exception from the bifurcation requirements of ASC 815-15 and therefore requires bifurcation as a derivative ("*2026 Notes Conversion Option*"). The 2026 Notes include certain adjustments to the conversion rate that violate the "fixed-for-fixed" criteria described in Accounting Standards Codification ("*ASC*") 815-40. As a result, the consolidated financial statements have been restated to reflect the issuance of the 2026 Notes Conversion Option at fair value as of December 7, 2021 and the subsequent remeasurement to fair value at each reporting date.

69.     Further, the 2024 10-K provided an overview of the adjustments in the Company's restatement of its previously issued consolidated financial statements.  The adjustments to the items in the Company's consolidated balance sheets, statements of operations, and statements of cash flows included, among others:

| Period | Item | Previously Reported Figure | Restated Figure |
|---|---|---|---|
| As of December 31, 2021 | Total Stockholders' Equity (Deficit) | $122,368,000 | $159,688,000 |
| Year Ended December 31, 2022 | Amortization of Debt Issuance Costs and Discount | $2,302,000 | $11,958,000 |
| | Deferred Income Tax (Benefit) Expense | $1,757,000 | $1,924,000 |
| | Net Increase (Decrease) in Fair Value of Derivatives | $1,591,000 | $21,387,000 |
| As of March 31, 2023 | Derivative Liabilities | $25,469,000 | $28,469,000 |
| Three Months Ended March 31, 2023 | Interest Expense | $3,556,000 | $6,084,000 |
| | Net Increase (Decrease) in Fair Value of Derivatives | $10,567,000 | $13,012,000 |
| | Net Loss | $26,214,000 | $31,187,000 |
| | Amortization of Debt Issuance Costs and Discount | $500,000 | $3,028,000 |
| As of June 30, 2023 | Derivative Liabilities | $44,126,000 | $46,435,000 |
| Three Months Ended June 30, 2023 | Interest Expense | $3,560,000 | $6,186,000 |
| | Net Loss | $16,895,000 | $18,830,000 |
| Six Months Ended June 30, 2023 | Interest Expense | $7,116,000 | $12,270,000 |
| | Net Loss | $43,109,000 | $50,017,000 |
| | Amortization of Debt Issuance Costs and Discount | $1,006,000 | $6,160,000 |
| | Net Increase (Decrease) in Fair Value of Derivatives | $13,688,000 | $15,442,000 |
| As of September 30, 2023 | Derivative Liabilities | $28,467,000 | $29,166,000 |
| Three Months Ended September 30, 2023 | Interest Expense | $3,540,000 | $6,267,000 |
| Nine Months Ended September 30, 2023 | Interest Expense | $10,656,000 | $18,537,000 |
| | Net Loss | $39,110,000 | $47,135,000 |
| | Amortization of Debt Issuance Costs and Discount | $1,512,000 | $9,393,000 |
| Three Months Ended December 31, 2023 | Interest Expense | $3,544,000 | $6,340,000 |
| | Net Loss | $21,256,000 | $23,522,000 |

| As of December 31, 2023 | Derivative Liabilities | $37,862,000 | $38,353,000 |
|---|---|---|---|
| Year Ended December 31, 2023 | Interest Expense | $14,200,000 | $24,877,000 |
| | Net Loss | $60,366,000 | $70,657,000 |
| | Amortization of Debt Issuance Costs and Discount | $2,018,000 | $12,695,000 |
| | Deferred Income Tax (Benefit) Expense | $88,000 | $235,000 |
| As of March 31, 2024 | Derivative Liabilities | $24,956,000 | $25,262,000 |
| | Total Stockholders' Equity (Deficit) | $108,482,000 | $143,173,000 |
| Three Months Ended March 31, 2024 | Interest Expense | $3,555,000 | $6,385,000 |
| | Net Loss | $125,147,000 | $127,792,000 |
| | Amortization of Debt Issuance Costs and Discount | $506,000 | $3,336,000 |
| As of June 30, 2024 | Derivative Liabilities | $17,074,000 | $17,181,000 |
| | Total Stockholders' Equity (Deficit) | $102,756,000 | $134,745,000 |
| Three Months Ended June 30, 2024 | Interest Expense | $3,551,000 | $6,452,000 |
| | Net Increase (Decrease) in Fair Value of Derivatives | $7,882,000 | $8,081,000 |
| | Net Loss | $11,737,000 | $14,439,000 |
| Six Months Ended June 30, 2024 | Interest Expense | $7,106,000 | $12,837,000 |
| | Net Loss | $136,884,000 | $142,231,000 |
| | Amortization of Debt Issuance Costs and Discount | $1,012,000 | $6,743,000 |
| As of September 30, 2024 | Derivative Liabilities | $15,796,000 | $15,851,000 |
| | Total Stockholders' Equity (Deficit) | $98,433,000 | $127,463,000 |
| Nine Months Ended September 2024 | Interest Expense | $10,647,000 | $19,389,000 |
| | Net Loss | $149,060,000 | $157,366,000 |
| | Amortization of Debt Issuance Costs and Discount | $1,517,000 | $10,259,000 |

70.    Finally, in discussing the Company's internal control over financial reporting, the

2024 10-K stated, in relevant part:

*Material Weakness in Internal Control Over Financial Reporting*

A material weakness is a deficiency, or combination of deficiencies, in internal control over financial reporting, such that there is a reasonable possibility that a material misstatement of our annual or interim consolidated financial statements will not be prevented or detected on a timely basis.

In connection with the Company's evaluation of internal control over financial reporting for the year ended December 31, 2024, the following material weakness was identified:

- *We have not consistently executed our technical accounting review policies, inclusive of the application of certain interpretations subject to significant judgement or differences in interpretation, at a precision level sufficient to achieve complete, accurate and timely financial accounting, reporting and disclosures of certain non-routine, unusual, or complex transactions.*

The material weakness described above did not result in a material misstatement to the consolidated financial statements as of December 31, 2024 and the year then ended presented in this Annual Report on Form 10-K; however, the material weakness did result in a material misstatement to the consolidated financial statements as of and for the years ended December 31, 2023 and December 31, 2022, and as of and for the interim quarterly periods during the years ended December 31, 2024 and 2023 presented in this Annual Report on Form 10-K and labeled as restated.

71.    On this news, BigBear's stock price fell $0.32 per share, or 9.11%, to close at $3.19 per share on March 26, 2025.

72.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## SCIENTER ALLEGATIONS

73.    During the Class Period, Defendants had both the motive and opportunity to commit fraud. They also had actual knowledge of the misleading nature of the statements they made, or acted in reckless disregard of the true information known to them at the time. In so doing, Defendants participated in a scheme to defraud and committed acts, practices, and participated in

a course of business that operated as a fraud or deceit on purchasers of the Company's securities during the Class Period.

## **PLAINTIFF'S CLASS ACTION ALLEGATIONS**

74.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired BigBear securities during the Class Period (the "Class") and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

75.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, BigBear securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by BigBear or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

76.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

77.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

78.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of BigBear;

- whether the Individual Defendants caused BigBear to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of BigBear securities during the Class Period were artificially inflated because of Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

79.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

80.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- BigBear securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold BigBear securities between the time Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

81.    Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

82.    Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

83.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

84.    This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

24

85.    During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of BigBear securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire BigBear securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

86.    Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for BigBear securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about BigBear's finances and business prospects.

87.    By virtue of their positions at BigBear, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose

25

such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

88.    Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of BigBear, the Individual Defendants had knowledge of the details of BigBear's internal affairs.

89.    The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of BigBear.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to BigBear's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of BigBear securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning BigBear's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired BigBear securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

90.     During the Class Period, BigBear securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of BigBear securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of BigBear securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of BigBear securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

91.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

92.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

93.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

94.     During the Class Period, the Individual Defendants participated in the operation and management of BigBear, and conducted and participated, directly and indirectly, in the conduct of BigBear's business affairs.  Because of their senior positions, they knew the adverse non-public information about BigBear's misstatement of income and expenses and false financial statements.

95.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to BigBear's financial condition and results of operations, and to correct promptly any public statements issued by BigBear which had become materially false or misleading.

96.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which BigBear disseminated in the marketplace during the Class Period concerning BigBear's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause BigBear to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of BigBear within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of BigBear securities.

97.     Each of the Individual Defendants, therefore, acted as a controlling person of BigBear.  By reason of their senior management positions and/or being directors of BigBear, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, BigBear to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of BigBear and possessed the

power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

98.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by BigBear.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the class representative;

B.    Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.    Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  April 11, 2025                          Respectfully submitted,

                                                **COHEN MILSTEIN SELLERS**
                                                **& TOLL PLLC**

                                                */s/ Steven J. Toll*
                                                Steven J. Toll (Va. Bar No. 15300)
                                                Daniel S. Sommers
                                                S. Douglas Bunch
                                                1100 New York Avenue, N.W. Suite 800
                                                Washington, D.C. 20005
                                                Telephone: (202) 408-4600
                                                Facsimile: (202) 408-4699
                                                stoll@cohenmilstein.com
                                                dsommers@cohenmilstein.com
                                                dbunch@cohenmilstein.com

**POMERANTZ LLP**
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

*Attorneys for Plaintiff*

# CERTIFICATION PURSUANT
# TO FEDERAL SECURITIES LAWS

1.    I, _____Sean Priewe_____, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.    I have reviewed a Complaint against BigBear.ai Holdings, Inc. ("BigBear") and authorize the filing of a comparable complaint on my behalf.

3.    I did not purchase or acquire BigBear securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.    I am willing to serve as a representative party on behalf of a Class of investors who purchased or otherwise acquired BigBear securities during the Class Period as specified in the Complaint, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.    The attached sheet lists all of my transactions in BigBear securities during the Class Period as specified in the Complaint.

6.    During the three-year period preceding the date on which this Certification is signed, I have not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7.    I agree not to accept any payment for serving as a representative party on behalf of the Class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.      I declare under penalty of perjury under the laws of the United States of America

that the foregoing is true and correct.

**Executed** _4/2/2025_____
                    **(Date)**

DocuSigned by:

*Sean Priewe*

_____791BA72A3C664A0..._____
**(Signature)**

Sean Priewe
_____
              **(Type or Print Name)**

**BigBear.ai Holdings, Inc. (BBAI)**                                      **Sean Priewe**

### List of Purchases/Acquisitions and Sales

| Transaction Type | Security Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|---|
| Purchase/Acquisition | Common Stock | 2/27/2025 | 8,400 | $5.9500 |
| Sale | C 20250307 6 | 2/27/2025 | (84) | $0.5100 |
| Sale | C 20250417 5.5 | 3/18/2025 | (84) | $0.1100 |