**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| SEAN PRIEWE, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>        v.<br><br>BIGBEAR.AI HOLDINGS, INC., LOUIS R. BROTHERS, AMANDA LONG, KEVIN MCALEENAN, JOSHUA KINLEY, and JULIE A. PEFFER,<br><br>    Defendants. | Case No: 1:25-cv-00623-PTG-WEF |

**MEMORANDUM OF LAW IN SUPPORT OF JASON WAMP'S MOTION FOR**
**APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF HIS**
**SELECTION OF LEAD AND LIAISON COUNSEL**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL BACKGROUND.................................................................................................... 2

ARGUMENT............................................................................................................................ 6

I.      WAMP IS ENTITLED TO BE APPOINTED LEAD PLAINTIFF FOR THE CLASS.... 6

     A.      The PSLRA Standard For Appointing Lead Plaintiff............................................. 6

     B.      Under the PSLRA, Wamp Should be Appointed Lead Plaintiff ............................ 7

          1.      Wamp Filed a Timely Motion...................................................................... 7

          2.      Wamp Has the Largest Financial Interest in the Relief Sought by the
             Class ......................................................................................................... 8

          3.      Wamp Meets Rule 23's Typicality and Adequacy Requirements .............. 8

II.     WAMP'S SELECTION OF THE FARUQI FIRM AS LEAD COUNSEL AND THE
       REILLY FIRM AS LIAISON COUNSEL SHOULD BE APPROVED........................... 11

CONCLUSION...................................................................................................................... 14

## TABLE OF AUTHORITIES

**Cases**                                                                                                                       **Page(s)**

*Baughman v. Pall Corp.*,
   250 F.R.D. 121 (E.D.N.Y. 2008) ...............................................................................6, 7, 8

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*,
   252 F.R.D. 188 (S.D.N.Y. 2008) ...............................................................................9, 10

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001)...........................................................................................10

*In re Cree, Inc., Sec. Litig.*,
   219 F.R.D. 369 (M.D.N.C. 2003) ....................................................................................9

*Foley v. Transocean Ltd.*,
   272 F.R.D. 126 (S.D.N.Y. 2011) .....................................................................................6

*In re Fuwei Films Sec. Litig.*,
   247 F.R.D. 432 (S.D.N.Y. 2008) ...............................................................................7, 8, 9

*In re GE Sec. Litig.*,
   No 09 Civ. 1951 (DC), 2009 WL 2259502 (S.D.N.Y. July 29, 2009) ..............................8, 10

*Johnson v. Pozen, Inc.*,
   No. 1:07CV599, 2008 WL 474334 (M.D.N.C. Feb. 15, 2008) ..................................................9

*Kokkinis v. Aegean Marine Petroleum Network Inc.*,
   No. 11 Civ. 0917(BSJ)(JCF), 2011 WL 2078010 (S.D.N.Y. May 19, 2011).........................10

*Levine v. AtriCure, Inc.*,
   508 F. Supp. 2d 268 (S.D.N.Y. 2007).............................................................................6

*In re MicroStrategy Inc. Sec. Litig.*,
   110 F. Supp. 2d 427 (E.D. Va. 2000) ..........................................................................9, 10

*In re Olsten Corp. Sec. Litig.*,
   3 F. Supp. 2d 286 (E.D.N.Y. 1998) .................................................................................8

*Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*,
   275 F.R.D. 187 (S.D.N.Y. 2011) ....................................................................................10

*Pompano Beach Police & Firefighters' Ret. Sys. v. Comtech Telecomms. Corp.*,
   No. CV-09-3007 (SJF)(AKT), 2010 WL 3909331 (E.D.N.Y. Sept. 29, 2010).........................9

*In re Purchase Pro Inc. Sec. Litig.*,
   No. 2:01-cv-0483-JLQ-PAL (D. Nev. 2006)........................................................................13

*Quan v. Advanced Battery Techs., Inc.*,
   No. 11 Civ. 2279(CM), 2011 WL 4343802 (S.D.N.Y. Sept. 9, 2011) .....................................9

*Reitan v. China Mobile Games & Entm't Grp.*,
   68 F. Supp. 3d 390 (S.D.N.Y. 2014).....................................................................................11

*Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*,
   95 F. Supp. 3d 607 (S.D.N.Y. 2015).......................................................................................8

*In re Tronox, Inc. Sec. Litig.*,
   262 F.R.D. 338 (S.D.N.Y. 2009) .............................................................................................7

*Zak v. Chelsea Therapeutics Int'l, Ltd.*,
   780 F.3d 597 (4th Cir. 2015) .................................................................................................12

**Statutes**

15 U.S.C. § 78u-4(a) ........................................................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 23(a)(4)..........................................................................................................10

Anne Cullen, More Judges Are Demanding Diversity Among Class Counsel,
   Law360 (July 16, 2020) ........................................................................................................14

Ralph Chapoco, Calls for Lawyer Diversity Spread to Complex Class Litigation,
   Bloomberg Law (July 30, 2020) ...........................................................................................14

Movant Jason Wamp ("Wamp") respectfully submits this memorandum of law pursuant to § 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by Private Securities Litigation Reform Act of 1995 ("PSLRA"), in support of his motion for the entry of an order: (1) appointing Wamp as Lead Plaintiff; and (2) approving Wamp's selection of the law firm of Faruqi & Faruqi, LLP (the "Faruqi Firm") as Lead Counsel and The Law Office of Craig C. Reilly, Esq. ("Reilly Firm") as Liaison Counsel.[1]

## PRELIMINARY STATEMENT

The Action presently pending before this Court is brought on behalf of all persons and entities other than Defendants that purchased or otherwise acquired BigBear.ai Holdings, Inc. ("BigBear" or the "Company," together with Louis R. Brothers, Amanda Long, Kevin McAleenan, Joshua Kinley, and Julie A. Peffer, the "Defendants") securities between March 31, 2022 and March 25, 2025, both dates inclusive (the "Class Period"), which seek to recover damages caused by Defendants' violations of the Exchange Act.

With respect to the appointment of a lead plaintiff to oversee the Action, Congress established a presumption in the PSLRA that requires the Court to appoint the "most adequate plaintiff" as the lead plaintiff for the Action. 15 U.S.C. § 78u-4(a)(3)(B)(i). The "most adequate plaintiff" is the person who has the "largest financial interest in the relief" and who also satisfies Rule 23's typicality and adequacy requirements for class representatives. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

---

[1]      Unless stated otherwise, the following conventions apply: (1) all citations, internal quotation marks and footnotes are omitted; (2) all emphases are added; and (3) all "Ex. _" references are to the exhibits attached to the Declaration of Craig C. Reilly in Support of Jason Wamp's Motion for Appointment as Lead Plaintiff and Approval of Lead and Liaison Counsel filed herewith.

1

With LIFO losses of $144,336.08, Wamp, to the best of counsel's knowledge, has the largest financial interest in the litigation of any movant. Wamp also satisfies Rule 23's typicality and adequacy requirements. Wamp's claims are typical of the Class's claims because he suffered losses on his BigBear investment as a result of Defendants' false and misleading statements. Further, Wamp has no conflict with the Class and will adequately protect the Class's interests given his significant stake in the litigation and his conduct to date in prosecuting the litigation, including his submission of the requisite certification and selection of experienced class counsel. Accordingly, Wamp is the presumptive Lead Plaintiff.

Lastly, if appointed Lead Plaintiff, Wamp is entitled to select, subject to the Court's approval, lead and liaison counsel to represent the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). Wamp has engaged the Faruqi Firm for this purpose. The Faruqi Firm is an appropriate selection to serve as Lead Counsel because it is a highly experienced firm with substantial securities class action experience.  Likewise, Reilly Law is an appropriate selection to serve as Liaison Counsel.

For the reasons summarized above and those explained more fully below, Wamp's motion should be granted in its entirety.

## FACTUAL BACKGROUND

BigBear is an artificial intelligence ("AI")-driven technology solutions company. ¶ 2. The Company purportedly offers national security, supply chain management, and digital identity and biometrics solutions. *Id*. The Company is incorporated in Delaware, but maintains an office in McLean, Virginia. ¶ 18. The Company's stock trades on the New York Stock Exchange ("NYSE"). *Id*.

In June 2021, BigBear.ai Holdings entered into a merger agreement (the "Merger Agreement") with GigCapital4, Inc. ("GigCapital4"), a special purpose acquisition company

2

("SPAC"), GigCapital4 Merger Sub Corporation ("Merger Sub"), and BBAI Ultimate Holdings. ¶ 3. Pursuant to the Merger Agreement, Merger Sub first merged with and into BigBear.ai Holdings, with BigBear.ai Holdings being the surviving entity in the merger (the "First Merger"). *Id.* Then, immediately following the First Merger, BigBear.ai Holdings merged with and into GigCapital4, with GigCapital4 being the surviving entity in the merger (the "Second Merger," and together with the First Merger, the "Mergers," and together with the other transactions contemplated by the Merger Agreement, the "Business Combination"). *Id.* On December 7, 2021, the Mergers were consummated and GigCapital4, Inc. was renamed as BigBear.ai Holdings, Inc. *Id.*

Upon completion of the Business Combination, BigBear issued $200 million of unsecured convertible notes—debt instruments that can be converted into equity at a future date—due to mature on December 15, 2026 (the "2026 Convertible Notes" or "2026 Notes"). ¶ 4. The 2026 Convertible Notes bear interest at a rate of 6.0% per annum, payable semi-annually, and not including any interest payments that are settled with the issuance of shares, and were convertible into 17,391,304 shares of the Company's common stock at an initial Conversion Price of $11.50. *Id.* Convertible notes are often classified as long-term debt and as such, consistent with generally accepted accounting principles ("GAAP"), they must be accounted for in a company's quarterly and annual reports as liabilities until they reach maturity, at which point they either convert to equity or are repaid as principal and interest. *Id.*

BigBear uses the Financial Accounting Standards Board's Accounting Standards Codification ("ASC")—the single source of U.S. GAAP—to account "for all transactions and events in which it obtains control over one or more other businesses (even if less than 100% ownership is acquired), to recognize the fair value of all assets and liabilities assumed and to

3

establish the acquisition date fair value as of the measurement date." ¶ 5. Accordingly, because the Business Combination qualified as such a transaction, BigBear was required to account for it, and its issuance of the 2026 Convertible Notes therewith, in accordance with the ASC. ¶ 29.

On March 31, 2022, BigBear filed an Annual Report on Form 10-K with the SEC, reporting the Company's financial and operational results for the year ended December 31, 2021 (the "2021 10-K"). ¶ 30. In providing a summary of the Company's significant accounting policies, the 2021 10-K stated, in relevant part, that "[t]he consolidated financial statements ***have been prepared in accordance with accounting principles generally accepted in the United States of America ("GAAP")***." *Id.* Further, in its consolidated balance sheet, the Company reported a "[t]otal stockholders' equity (deficit)" figure of $122,368,000 as of December 31, 2021. *Id.*

Further quarterly reports, filed on Form 10-Q with the SEC, contained substantively similar descriptions of the Company's purported utilization of GAAP in preparing its financial statements and the effectiveness of its disclosure controls and procedures. ¶¶ 33-38. This practice continued throughout the entire Class Period, culminating in the truth emerging on March 18, 2025, when BigBear disclosed in a filing on Form 8-K with the SEC that certain of BigBear's financial statements since fiscal year 2021 should no longer be relied upon and would be restated. ¶ 65.

On this news, BigBear's stock price fell $0.52 per share, or 14.9%, to close at $2.97 per share on March 18, 2025. ¶ 67. Then post-market on March 25, 2025, BigBear filed its 2024 10-K, which stated, in relevant part, that:

> [F]or the period ended December 31, 2024, management identified a material error in the previously reported financial statements related to its convertible notes issued in December 2021 and due in December 2026 ("2026 Notes") . . . The 2026 Notes include certain adjustments to the conversion rate that violate the

4

> "fixed-for-fixed" criteria described in Accounting Standards Codification ("*ASC*") 815-40. As a result, the consolidated financial statements have been restated to reflect the issuance of the 2026 Notes Conversion Option at fair value as of December 7, 2021 and the subsequent remeasurement to fair value at each reporting date.

*Id.* Further, the 2024 10-K provided an overview of the adjustments in the Company's restatement of its previously issued consolidated financial statements. ¶ 69. And finally, the Company revealed its material weakness in internal control over financial reporting. ¶ 70. On this news, BigBear's stock price fell $0.32 per share, or 9.11%, to close at $3.19 per share on March 26, 2025. ¶ 71.

Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies. ¶ 64. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) BigBear maintained deficient accounting review policies related to the reporting and disclosure of certain non-routine, unusual, or complex transactions; (ii) as a result, the Company incorrectly determined that the conversion option within the 2026 Convertible Notes qualified for the derivative scope exception under ASC 815-40 and failed to bifurcate the conversion option as required by ASC 815-15; (iii) accordingly, BigBear had improperly accounted for the 2026 Convertible Notes; (iv) the foregoing error caused BigBear to misstate various items in several of the Company's previously issued financial statements; (v) as a result, these financial statements were inaccurate and would likely need to be restated; (vi) BigBear would require extra time and expense to correct the inaccurate financial statements, thereby increasing the risk that the Company would be unable to timely file certain financial reports with the SEC; and (vii) as a result, the Company's public statements were materially false and misleading at all relevant times. *Id.*

Through the Action, Wamp seeks to recover for himself and absent class members the substantial losses that were suffered as a result of Defendants' fraud.

ARGUMENT

**I.    WAMP IS ENTITLED TO BE APPOINTED LEAD PLAINTIFF FOR THE CLASS**

**A.    The PSLRA Standard For Appointing Lead Plaintiff**

The PSLRA governs the appointment of a lead plaintiff for "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." *See* 15 U.S.C. § 78u-4(a)(l); *see also* 15 U.S.C. § 78u-4(a)(3)(B). It provides that within 20 days of the filing of the action, the plaintiff is required to publish notice in a widely circulated business-oriented publication or wire service, informing class members of their right to move the Court, within 60 days of the publication, for appointment as lead plaintiff. *See Foley v. Transocean Ltd.*, 272 F.R.D. 126, 127 (S.D.N.Y. 2011) (citing 15 U.S.C. § 78u-4(a)(3)(A)).

Under the PSLRA, the Court is then to consider any motion made by class members and is to appoint as lead plaintiff the movant that the Court determines to be "most capable of adequately representing the interests of class members . . . ." 15 U.S.C. § 78u-4(a)(3)(B)(i). Further, the PSLRA establishes a rebuttable presumption that the "most adequate plaintiff" is the person that:

> (aa) has either filed the complaint or made a motion in response to a notice [published by a complainant]; (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Levine v. AtriCure, Inc.*, 508 F. Supp. 2d 268, 276-77 (S.D.N.Y. 2007) (same); *Baughman v. Pall Corp.*, 250 F.R.D. 121, 125 (E.D.N.Y. 2008)

6

(describing the PSLRA's process for determining the "most adequate plaintiff"); *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 343-44 (S.D.N.Y. 2009) (same).

Once it is determined who among the movants seeking appointment as lead plaintiff is the presumptive lead plaintiff, the presumption can be rebutted only upon proof by a class member that the presumptive lead plaintiff: "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 436 (S.D.N.Y. 2008); *Baughman*, 250 F.R.D. at 125.

### B.    Under the PSLRA, Wamp Should be Appointed Lead Plaintiff

As discussed below, Wamp should be appointed Lead Plaintiff because all of the PSLRA's procedural hurdles have been satisfied, Wamp holds the largest financial interest of any movant, and Wamp otherwise satisfies Rule 23's typicality and adequacy requirements.

### 1.    Wamp Filed a Timely Motion

Pursuant to the PSLRA, the first plaintiff to file a complaint in the action was required to publish notice within twenty (20) days of its filing. 15 U.S.C. § 78u-4(a)(3)(A)(i). Counsel for first-filed plaintiff Sean Priewe published notice of the lead plaintiff deadline via *Accesswire* on April 11, 2025. *See* Ex. A. Consequently, any member of the proposed Class was required to seek to be appointed lead plaintiff within 60 days after publication of the notice, *i.e.*, on or before June 10, 2025. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). Thus, Wamp's motion is timely filed.

Additionally, pursuant to Section 21D(a)(2) of the Exchange Act, Wamp timely signed and submitted the requisite certification, identifying all of his relevant BigBear trades during the Class Period, and detailing Wamp's suitability to serve as Lead Plaintiff in this case. *See* Ex. B. The PSLRA's procedural requirements have therefore been met.

**2.    Wamp Has the Largest Financial Interest in the Relief Sought by the Class**

The PSLRA instructs the Court to adopt a rebuttable presumption that the "most adequate plaintiff" for lead plaintiff purposes is the person with the largest financial interest in the relief sought by the class. *See* 15 U.S.C. § 78u-4 (a)(3)(B)(iii)(I)(bb).

Although the PSLRA is silent as to any definitive methodology courts are to use in determining which movant has the largest financial interest in the relief sought, courts in this Circuit have typically looked to the following four factors in the inquiry: (1) the number of shares purchased by the movant during the Class Period; (2) the number of net shares purchased by the movant during the Class Period; (3) the total net funds expended by the movant during the Class Period; and (4) the approximate losses suffered by the movant. *See Fuwei*, 247 F.R.D. at 437; *Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*, 95 F. Supp. 3d 607, 616 (S.D.N.Y. 2015); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *Baughman*, 250 F.R.D. at 125; *In re GE Sec. Litig.*, No 09 Civ. 1951 (DC), 2009 WL 2259502, at *4 (S.D.N.Y. July 29, 2009). Courts have placed the most emphasis on the last of the four factors: the approximate loss suffered by the movant. *See, e.g.*, *Baughman*, 250 F.R.D. at 125; *In re GE*, 2009 WL 2259502, at *4; *Fuwei*, 247 F.R.D. at 437; *Topping*, 95 F. Supp. 3d at 616.

Overall, during the Class Period, Wamp purchased 42,000 net and 101,000 total BigBear shares, expended $284,601.50 in net funds and suffered losses of $144.336.08 attributable to the fraud. *See* Ex. C. Wamp is presently unaware of any other movant with a larger financial interest in the outcome of this litigation.

**3.    Wamp Meets Rule 23's Typicality and Adequacy Requirements**

The PSLRA also requires that, in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must satisfy the requirements of Rule 23 of the

8

Federal Rules of Civil Procedure. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). When assessing a potential lead plaintiff, only Rule 23(a)'s typicality and adequacy requirements are relevant. *See, e.g.*, *In re Cree, Inc., Sec. Litig.*, 219 F.R.D. 369, 372 (M.D.N.C. 2003); *In re MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 435 (E.D. Va. 2000); *Pompano Beach Police & Firefighters' Ret. Sys. v. Comtech Telecomms. Corp.*, No. CV-09-3007 (SJF)(AKT), 2010 WL 3909331, at *2 (E.D.N.Y. Sept. 29, 2010); *Fuwei*, 247 F.R.D. at 436; *see also Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 191 (S.D.N.Y. 2008) ("At this stage of the litigation, the moving plaintiff must only make a preliminary showing that the adequacy and typicality requirements have been met.").

Typicality is established where "a [l]ead [p]laintiff suffer[s] the same injuries as the class as a result of the defendant's conduct and has claims based on the same legal issues." *Johnson v. Pozen, Inc.*, No. 1:07CV599, 2008 WL 474334, at *2 (M.D.N.C. Feb. 15, 2008) (quoting *Weiss v. York Hosp.*, 745 F.2d 786, 810 n.36 (3d Cir. 1984)).

Wamp's claims are clearly typical of the Class's claims. Wamp purchased BigBear common stock during the Class Period, suffered damages as a result of the Company's false and misleading statements, and therefore can assert the Class's claims against Defendants under the federal securities laws. Because the factual and legal bases of BigBear's claims are similar to those of the Class's claims, Wamp necessarily satisfies the typicality requirement. *See Quan v. Advanced Battery Techs., Inc.*, No. 11 Civ. 2279(CM), 2011 WL 4343802, at *3 (S.D.N.Y. Sept. 9, 2011) (finding movant typical where "he suffered losses as a result of [the company's] false and misleading statements during the same period as the other movants, plaintiffs, and potential class members, and [] he is alleging violations of the same provisions of the [Exchange Act], against the same defendants as the other parties").

9

With respect to adequacy, Rule 23(a)(4) requires that the representative party will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequate representation will be found if able and experienced counsel represent the proposed representative, and the proposed representative has no fundamental conflicts of interest with the interests of the class as a whole. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 265 (3d Cir. 2001); *Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 190 (S.D.N.Y. 2011) ("In considering the adequacy of a proposed lead plaintiff, a court must consider: (1) whether the lead plaintiff's claims conflict with those of the class; and (2) whether class counsel is qualified, experienced, and generally able to conduct the litigation."); *In re GE*, 2009 WL 2259502, at *5 (Plaintiff "satisfies the adequacy requirement because its interests are aligned with those of the putative class, and it has retained competent and experienced counsel").

As evidenced by the representations in his certification, *see* Ex. B, Wamp's interests are perfectly aligned with—and by no means antagonistic to—the Class. *See MicroStrategy*, 110 F. Supp. 2d at 435-36; *Kokkinis v. Aegean Marine Petroleum Network Inc.*, No. 11 Civ. 0917(BSJ)(JCF), 2011 WL 2078010, at *2 (S.D.N.Y. May 19, 2011) (movant's certification evidenced adequacy to serve as lead plaintiff); *see also Blackmoss*, 252 F.R.D. at 191 (same). Contemporaneously with the filing of the instant motion, Wamp has submitted a Declaration with additional information about himself, his work and educational background, and experience investing, clearly demonstrating his adequacy to represent class members. *See* Ex. D. Wamp is a U.S. citizen residing in Houston, Texas. *Id.* ¶ 2. He has a degree in economics that he obtained from the University of Western Michigan. *Id.* ¶ 3. Wamp is the owner and manager of LJR Oilfield Well Service and Mud Pumps. *Id.* ¶ 4. He has owned and operated this business for approximately 20 years. *Id.* He has been investing in the stock market for approximately 20 years and manages his

10

own investments. *Id.* ¶ 5.

Wamp has also selected and retained highly competent counsel to litigate the claims on behalf of himself and the Class. As explained below in Section II, the Faruqi Firm is highly regarded for its experience, knowledge, and ability to conduct complex securities class action litigation. *See* Ex. E. Consequently, Wamp is more than adequate to represent the Class and has every incentive to maximize the Class's recovery.

In light of the foregoing, Wamp respectfully submits that he is the presumptive Lead Plaintiff and should be appointed Lead Plaintiff for the Action.

## II.    WAMP'S SELECTION OF THE FARUQI FIRM AS LEAD COUNSEL AND THE REILLY FIRM AS LIAISON COUNSEL SHOULD BE APPROVED

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the Lead Plaintiff is entitled to select and retain Lead Counsel for the Class, subject to the Court's approval. Wamp has selected the Faruqi Firm to be Lead Counsel for the Class. The Faruqi Firm is a minority-owned and woman-owned law firm, and, as reflected in the firm's resume, possesses extensive experience successfully litigating complex class actions on behalf of plaintiffs, including securities class actions. *See* Ex. E; *see also Reitan v. China Mobile Games & Entm't Grp.*, 68 F. Supp. 3d 390, 401 (S.D.N.Y. 2014) (appointing the Faruqi Firm as sole lead counsel and noting: "Faruqi & Faruqi has extensive experience in the area of securities litigation and class actions. The firm's resume indicates that it has litigated more than ten prominent securities class actions since its founding in 1995. Faruqi & Faruqi achieved successful outcomes in many of these cases.") (citation omitted).

For example, the Faruqi Firm has previously obtained significant recoveries for injured investors. *See, e.g., In re Tahoe Res., Inc. Sec. Litig.*, No. 2:17-cv-01868-RFB-NJK (D. Nev.) (where, as sole lead counsel, the firm obtained final approval of $19.5 million settlement); *In re*

*Peloton Interactive, Inc. Sec. Litig.*, No. 1:21-cv-02369-CBA-PK (E.D.N.Y.) (where, as sole lead counsel, the firm obtained final approval of $13.95 million settlement); *Lowthorp v. Mesa Air Grp., Inc.*, No. 2:20-cv-00648-MTL (D. Ariz.) (where, as sole lead counsel, the firm obtained final approval of $5 million settlement); *Wang v. Ampio Pharms., Inc.*, No. 22-cv-02105-WJM-MEH (D. Colo.) (where, as sole lead counsel, the firm obtained final approval of $3 million settlement); *Rudani v. Ideanomics, Inc.*, No. 1:19-cv-06741-GBD (S.D.N.Y.) (where, as sole lead counsel, the firm obtained final approval of $5 million settlement); *Larkin v. GoPro, Inc.*, No. 4:16-cv-06654-CW (N.D. Cal. 2019) (where, as sole lead counsel, the firm obtained final approval of $6.75 million settlement); *In re Geron Corp., Sec. Litig.*, No. 3:14-CV-01224-CRB (N.D. Cal. 2017) (where, as sole lead counsel, the Faruqi Firm obtained final approval of a $6.25 million settlement); *In re Dynavax Techs. Corp. Sec. Litig.*, No. 3:13-CV-02796 (CRB) (N.D. Cal. 2016) (where, as sole lead counsel, the Faruqi Firm obtained final approval of a $4.5 million settlement); *McIntyre v. Chelsea Therapeutics Int'l, LTD.*, No. 3:12-cv-00213-MOC-DCK (W.D.N.C. 2016) (where, as sole lead counsel, the Faruqi Firm secured the reversal of the district court's dismissal of the action at the Fourth Circuit, *see Zak v. Chelsea Therapeutics Int'l, LTD.*, 780 F.3d 597 (4th Cir. 2015), and obtained final approval of a $5.5 million settlement); *In re Ebix, Inc. Sec. Litig.*, No. 1:11-CV-02400-RWS (N.D. Ga. 2014) (where the Faruqi Firm, as sole lead counsel for the class, secured a $6.5 million settlement); *Shapiro v. Matrixx Initiatives, Inc.*, No. CV-09-1479-PHX-ROS (D. Ariz. 2013) (where the Faruqi Firm, as co-lead counsel for the class, secured a $4.5 million settlement); *In re United Health Grp. Inc. Deriv. Litig.*, No. 27 CV 06-8085 (Minn. 4th Jud. Dist. 2009) (where the Faruqi Firm, as co-lead counsel, obtaining a recovery of more than $930 million for the benefit of the Company, and negotiating important corporate governance reforms designed to make the nominal defendant corporation a model of

12

responsibility and transparency); *In re Tellium Inc. Sec. Litig.*, No. 3:02-cv-5878-FLW-JJH

(D.N.J. 2006) (where the Faruqi Firm, as co-lead counsel and recovering a $5.5 million

settlement); *In re Olsten Corp. Sec. Litig.*, No. 0:97-CV-5056-DRH-ETB (E.D.N.Y. 2001)

(where the Faruqi Firm, as co-lead counsel, recovered $24.1 million for class members); and *In

re Purchase Pro Inc. Sec. Litig.*, No. 2:01-cv-0483-JLQ-PAL (D. Nev. 2006) (where the Faruqi

Firm, as co-lead counsel for the class, secured a $24.2 million settlement).

The Faruqi Firm is also currently litigating several prominent securities class actions.

*See, e.g., Salem v. Methode Electronics, Inc.*, No. 1:24-cv-07696 (N.D. Ill.) (appointed sole lead

counsel for the class); *Wayne v. Maxeon Solar Techs., Ltd.*, No. 24-cv-03869-EMC (N.D. Cal.)

(appointed sole lead counsel for the class); *Labelle v. Future FinTech Group, Inc.*, No. 2:24-cv-

00247-JXN-JSA (D.N.J.) (appointed sole lead counsel for the class); *Clifton v. Willis*, No. 1:22-

cv-03161-DDD-JPO (D. Colo.) (appointed sole lead counsel for the class of NewAge, Inc.

shareholders); *Lim v. Hightower*, No. 4:23-cv-01454-BYP (N.D. Ohio) (appointed sole lead

counsel for the class of Lordstown Motors Corp. shareholders); *Johnson v. Luminar Techs., Inc.*,

No. 6:23-cv-982-JSS-LHP (M.D. Fla.) (appointed sole lead counsel for the class); *In re Revance

Therapeutics, Inc. Sec. Litig.*, No. 3:21-cv-09585-AMO (N.D. Cal.) (appointed sole lead counsel

for the class); and *Halman Aldubi Provident & Pension Funds Ltd. v. Teva Pharms. Indus. Ltd.*,

No. 20-4660-KSM (E.D. Pa.) (appointed sole lead counsel for the class).The Faruqi Firm is a

minority-owned and woman-owned[2] law firm, and, as reflected in the firm's resume, possesses

extensive experience successfully litigating complex class actions on behalf of plaintiffs,

including securities class actions. The Faruqi Firm has a proven track record of successfully

---

[2]     *See* Ex. F (certificate from Women's Business Enterprise National Council certifying the
Faruqi Firm as a woman-owned business).

representing its clients in these matters and is nationally recognized for its excellence. Not only does the firm have the experience and expertise necessary to obtain significant successes for its clients, it has a demonstrated commitment to diversity and inclusion that clients and judges increasingly seek from the bar.[3] Class members in securities class actions have diverse backgrounds, and that diversity should be reflected in class counsel. Currently, over 40% of the firm's partnership positions are held by women and minorities, and the firm is committed to growing this figure in the coming years. *See* https://www.faruqilaw.com /our-attorneys. The Faruqi Firm is proud to be made up of such a diverse group of legal professionals and strongly believes that its clients are better served because of it.

Finally, Wamp's choice of liaison counsel, the Alexandria based law firm of Craig C. Reilly, Esq., should be approved as well. The Reilly Firm specializes in business litigation, and its principal, Craig C. Reilly, has substantial business litigation experience.

### CONCLUSION

For the foregoing reasons, Wamp respectfully requests that the Court: (1) appoint it as Lead Plaintiff; (2) approve his selection of the Faruqi Firm as Lead Counsel for the putative Class; and (3) grant such other relief as the Court may deem just and proper.

DATED: June 10, 2025                           Respectfully submitted,


                                               */s/ Craig C. Reilly*
                                               CRAIG C. REILLY
                                               VSB #20942
                                               **THE OFFICE OF CRAIG C. REILLY, ESQ.**
                                               209 Madison Street, Suite 501

---

[3]    *See* Anne Cullen, More Judges Are Demanding Diversity Among Class Counsel, Law360 (July 16, 2020), https://www.law360.com/articles/1292926/more-judges-are-demanding-diversity-among-class-counsel; Ralph Chapoco, Calls for Lawyer Diversity Spread to Complex Class Litigation, Bloomberg Law (July 30, 2020), https://www.bloomberglaw.com/document/ XA1TPNEG000000?bna_news_filter=social-justice&jcsearch=BNA.

Alexandria, VA 22314
Telephone: 703/549-5354
703/549-5355 (fax)
craig.reilly@ccreillylaw.com

*Attorneys for Proposed Lead Plaintiff Jason Wamp*
*and Proposed Liaison Counsel for the Class*

James M. Wilson (*pro hac vice* forthcoming)
**FARUQI & FARUQI, LLP**
685 Third Ave., 26th Fl.
New York, NY 10017
Telephone: (212) 983-9330
Facsimile: (212) 983-9331
Email: jwilson@faruqilaw.com

Robert W. Killorin (*pro hac vice* forthcoming)
**FARUQI & FARUQI, LLP**
3565 Piedmont Road NE Building Four
Suite 380
Atlanta, GA 30305
Telephone: 404-847-0617
Facsimile: 404-506-9534
Email: rkillorin@faruqilaw.com

*Attorneys for Proposed Lead Plaintiff Jason Wamp*
*and Proposed Lead Counsel for the Class*

15