UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| SEAN PRIEWE, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>        v.<br><br>BIGBEAR.AI HOLDINGS, INC., LOUIS R. BROTHERS, AMANDA LONG, KEVIN MCALEENAN, JOSHUA KINLEY, and JULIE A. PEFFER,<br><br>    Defendants. | Case No.  1:25-cv-00623-PTG-WEF |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF MARY LOU CACCAVALE FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF <u>COUNSEL</u>**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ........................................................................................................ 2

ARGUMENT ............................................................................................................................ 6

I.      CACCAVALE SHOULD BE APPOINTED LEAD PLAINTIFF ................................... 6

      A.      Caccavale Is Willing to Serve as a Class Representative and Has Timely Filed This Motion to Be Appointed Lead Plaintiff. ......................................................... 7

      B.      Caccavale Has the "Largest Financial Interest" in the Action. .............................. 8

      C.      Caccavale Otherwise Satisfies the Requirements of Rule 23. ............................... 9

      D.      Caccavale Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses. ......................................................................... 11

II.     LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED ......... 11

CONCLUSION ....................................................................................................................... 13

CERTIFICATE OF SERVICE………………………………………………………………..15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bousso v. Spire Glob., Inc.*,
No. 1:24-CV-01458-MSN-WEF, 2024 WL 4873311 (E.D. Va. Nov. 21, 2024)......................8

*Chamblee v. Terraform Power, Inc.*,
No. PX 16-981, 2016 WL 4039178 (D. Md. July 28, 2016) ................................................9, 10

*Hirtenstein v. Cempra, Inc.*,
Nos. 1:16cv1303 *et al.*, 2017 WL 2874588 (M.D.N.C. July 5, 2017)......................................9

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)......................................................................................................8

*In re Comverse Tech., Inc. Sec. Litig.*,
No. 06-CV-1825 (NGG) (RER), 2007 WL 680779 (E.D.N.Y. Mar. 2, 2007) .........................8

*In re Microstrategy Sec. Litig.*,
110 F. Supp. 2d 427 (E.D. Va. 2000) .....................................................................................11

*In re Olsten Corp. Sec. Litig.*,
3 F. Supp. 2d 286 (E.D.N.Y. 1998) ..........................................................................................8

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
219 F.R.D. 343 (D. Md. 2003)...................................................................................................9

*Johnson v. Pozen, Inc.*,
No. 1:07CV599, 2008 WL 474334 (M.D.N.C. Feb. 15, 2008) .........................................9, 10

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
311 F.R.D. 373 (S.D.N.Y. 2015) .............................................................................................11

*Lax v. First Merchants Acceptance Corp.*,
Nos. 97 C 2715 *et al.*, 1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997) ........................8

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*,
No. 10-cv-00302-MRPMAN (C.D. Cal.) ................................................................................13

*New Jersey Carpenters Health Fund v. Residential Capital, LLC*,
No. 08-cv-8781 (HB) (S.D.N.Y.) ............................................................................................13

*Palm Tran, Inc. - Amalgamated Transit Union Loc. 1577 Pension Plan v.
Emergent Biosolutions Inc.*,
No. PWG-21-1189, 2021 WL 6072812 (D. Md. Dec. 23, 2021) ..............................................8

*Rice v. Genworth Fin. Inc.*,
    No. 3:17cv59, 2017 WL 3699859 (E.D. Va. Aug. 25, 2017) ...................................................10

*Tchatchou v. India Globalization Cap., Inc.*,
    No. 8:18-CV-03396-PWG, 2019 WL 1004591 (D. Md. Feb. 28, 2019)...................................8

**Statutes**

15 U.S.C. § 78u-4 ....................................................................................................... *passim*

Private Securities Litigation Reform Act of 1995 ..........................................................1, 7, 8, 11

**Rules**

Fed. R. Civ. P. 23..................................................................................................... *passim*

iii

Mary Lou Caccavale ("Caccavale")[1] respectfully submits this memorandum of law in support of her motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for an Order: (1) appointing Caccavale as Lead Plaintiff on behalf of all persons and entities that purchased or otherwise acquired BigBear.ai Holdings, Inc. ("BigBear" or the "Company") securities between March 31, 2022 and March 25, 2025, inclusive (the "Class Period") (the "Class"); and (2) approving proposed Lead Plaintiff's selections of Pomerantz LLP ("Pomerantz") as Lead Counsel and Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") as Liaison Counsel for the Class.

## PRELIMINARY STATEMENT

The complaint in the above-captioned action (the "Action") alleges that the above-captioned defendants ("Defendants") defrauded investors in violation of the Exchange Act. BigBear investors, including Caccavale, incurred significant losses following the disclosure of the alleged fraud, which caused the prices of BigBear securities to fall sharply, damaging Caccavale and other BigBear investors.

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant or group of movants that possesses the largest financial interest in the outcome of the Action and that satisfies the requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). During the Class Period, Caccavale purchased 134,262.431 shares of BigBear stock, expended $716,822 on these purchases, retained 11,937.431 of her shares of BigBear stock,

---

[1] Caccavale pursues these claims both on her own behalf and on behalf of her husband, Joseph Caccavale, her son, Dmitry Caccavale, her son, Joseph Alexander Caccavale, and her daughter, Miraslava Caccavale, from all of whom she has received valid assignments of those claims. *See* Declaration of Steven J. Toll in Support of Motion ("Toll Decl."), Exhibit ("Ex.") A.

and, as a result of the disclosures revealing the misrepresentations and/or omissions during the Class Period, incurred losses of approximately $252,451 in connection with her Class Period purchases of BigBear securities. *See* Toll Decl., Ex. B. Accordingly, Caccavale believes that she has the largest financial interest in the relief sought in the Action.

Beyond her considerable financial interest, Caccavale also meets the applicable requirements of Rule 23 because her claims are typical of absent Class members and because she will fairly and adequately represent the interests of the Class.

To fulfill her obligations as Lead Plaintiff and vigorously prosecute the Action on behalf of the Class, Caccavale has selected Pomerantz as Lead Counsel, and Cohen Milstein as Liaison Counsel, for the Class. These firms and their attorneys are highly experienced in the area of securities litigation and class actions and have successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firms' respective resumes.

Accordingly, based on her significant financial interest, her satisfaction of the applicable requirements of Rule 23, and her commitment to overseeing this litigation, Caccavale respectfully requests that the Court enter an order appointing her as Lead Plaintiff for the Class and approving her selections of Lead Counsel and Liaison Counsel for the Class.

## STATEMENT OF FACTS

As alleged in the complaint in the Action, BigBear is an artificial intelligence ("AI")-driven technology solutions company. The Company purportedly offers national security, supply chain management, and digital identity and biometrics solutions.

In June 2021, BigBear.ai Holdings entered into a merger agreement (the "Merger Agreement") with GigCapital4, Inc. ("GigCapital4"), a special purpose acquisition company

2

("SPAC")[2], GigCapital4 Merger Sub Corporation ("Merger Sub"), and BBAI Ultimate Holdings. Pursuant to the Merger Agreement, Merger Sub first merged with and into BigBear.ai Holdings, with BigBear.ai Holdings being the surviving entity in the merger (the "First Merger"). Then, immediately following the First Merger, BigBear.ai Holdings merged with and into GigCapital4, with GigCapital4 being the surviving entity in the merger (the "Second Merger," and together with the First Merger, the "Mergers," and together with the other transactions contemplated by the Merger Agreement, the "Business Combination"). On December 7, 2021, the Mergers were consummated and GigCapital4, Inc. was renamed as BigBear.ai Holdings, Inc.

Upon completion of the Business Combination, BigBear issued $200 million of unsecured convertible notes—debt instruments that can be converted into equity at a future date—due to mature on December 15, 2026 (the "2026 Convertible Notes" or "2026 Notes"). The 2026 Convertible Notes bear interest at a rate of 6.0% per annum, payable semi-annually, and not including any interest payments that are settled with the issuance of shares, and were convertible into 17,391,304 shares of the Company's common stock at an initial Conversion Price of $11.50. Convertible notes are often classified as long-term debt and as such, consistent with generally accepted accounting principles ("GAAP"), they must be accounted for in a company's quarterly and annual reports as liabilities until they reach maturity, at which point they either convert to equity or are repaid as principal and interest.

BigBear uses the Financial Accounting Standards Board's Accounting Standards Codification ("ASC")—the single source of United States ("U.S.") GAAP—to account "for all transactions and events in which it obtains control over one or more other businesses (even if less

---

[2] A SPAC, also called a blank-check company, is a development stage company that has no specific business plan or purpose or has indicated that its business plan is to engage in a merger or acquisition with an unidentified company or companies, other entity, or person.

than 100% ownership is acquired), to recognize the fair value of all assets and liabilities assumed and to establish the acquisition date fair value as of the measurement date." Accordingly, because the Business Combination qualified as such a transaction, BigBear was required to account for it, and its issuance of the 2026 Convertible Notes therewith, in accordance with the ASC.

Under ASC 815-15, an entity is required to bifurcate and separately account for a feature or derivative embedded within a host contract (such as the conversion option within the 2026 Convertible Notes) if: (1) the economic characteristics and risks of the embedded derivative are not clearly and closely related to the economic characteristics of the host contract; (2) the hybrid instrument is not remeasured at fair value under otherwise applicable GAAP with changes in fair value reported in earnings as they occur; and (3) a separate freestanding instrument with the same terms as the embedded derivative would meet the definition of a derivative and would not qualify for a "derivative scope exception." An embedded derivative may qualify for a scope exception if, for example, it meets the requirements of ASC 815-40, which covers contracts issued or held by an entity that are both indexed to its own stock[3] and classified in stockholders' equity in its statement of financial position. If an embedded feature qualifies for a derivative scope exception, the entity does not separate it from the host contract and the entity accounts for the entire instrument (assuming no other embedded features require bifurcation) in accordance with other U.S. GAAP. Therefore, whether BigBear was required to bifurcate the conversion option within the 2026 Convertible Notes as a derivative was dependent, in part, upon the conversion option's qualification for a derivative scope exception.

---

[3] Under ASC 815-40, an instrument (or embedded feature) is considered indexed to an entity's own stock if its settlement amount will equal the difference between the fair value of a fixed number of the entity's equity shares and a fixed monetary amount or a fixed amount of a debt instrument issued by the entity (the "fixed-for-fixed" rule).

Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) BigBear maintained deficient accounting review policies related to the reporting and disclosure of certain non-routine, unusual, or complex transactions; (ii) as a result, the Company incorrectly determined that the conversion option within the 2026 Convertible Notes qualified for the derivative scope exception under ASC 815-40 and failed to bifurcate the conversion option as required by ASC 815-15; (iii) accordingly, BigBear had improperly accounted for the 2026 Convertible Notes; (iv) the foregoing error caused BigBear to misstate various items in several of the Company's previously issued financial statements; (v) as a result, these financial statements were inaccurate and would likely need to be restated; (vi) BigBear would require extra time and expense to correct the inaccurate financial statements, thereby increasing the risk that the Company would be unable to timely file certain financial reports with the U.S. Securities and Exchange Commission ("SEC"); and (vii) as a result, the Company's public statements were materially false and misleading at all relevant times

On March 18, 2025, BigBear disclosed in a filing with the SEC that certain of the Company's financial statements since fiscal year 2021 should no longer be relied upon and would be restated. Specifically, management identified a material error in the previously reported financial statements related to the accounting treatment of the Company's 2026 Convertible Notes. In addition, BigBear revealed that, as a result of the foregoing, the Company would be unable to timely file its Annual Report for 2024 (the "2024 10-K") "without unreasonable effort or expense."

On this news, BigBear's stock price fell $0.52 per share, or 14.9%, to close at $2.97 per share on March 18, 2025.

Then, post-market on March 25, 2025, BigBear filed its 2024 10-K. In discussing the error

in the previously reported financial statements, the 2024 10-K stated, in relevant part, that a "conversion option embedded within the 2026 Notes was incorrectly deemed to be eligible for a scope exception from the bifurcation requirements of ASC 815-15 and therefore requires bifurcation as a derivative ('*2026 Notes Conversion Option*')" and that "[t]he 2026 Notes include certain adjustments to the conversion rate that violate the 'fixed-for-fixed' criteria described in [ASC] 815-40." As a result, the consolidated financial statements were restated "to reflect the issuance of the 2026 Notes Conversion Option at fair value as of December 7, 2021 and the subsequent remeasurement to fair value at each reporting date." The 2024 10-K further revealed that the adjustments reflected in the restatements related to, among other items, accumulated deficit, derivative liabilities, deferred tax liabilities, net loss, interest expense, and amortization of debt issuance discount. Finally, the 2024 10-K disclosed that the Company had identified a material weakness in its internal control over financial reporting—specifically, that BigBear had not "consistently executed [its] technical accounting review policies, inclusive of the application of certain interpretations subject to significant judgement or differences in interpretation, at a precision level sufficient to achieve complete, accurate and timely financial accounting, reporting and disclosures of certain non-routine, unusual, or complex transactions."

On this news, BigBear's stock price fell $0.32 per share, or 9.11%, to close at $3.19 per share on March 26, 2025.

## ARGUMENT

### I.    CACCAVALE SHOULD BE APPOINTED LEAD PLAINTIFF

Caccavale should be appointed Lead Plaintiff because, to the best of her knowledge, she has the largest financial interest in the Action and otherwise strongly satisfies the requirements of Rule 23. The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of the class action and to do so by the later of (i) 90

days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate.  15 U.S.C. § 78u-4(a)(3)(B)(i)-(ii).

Further, under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), the Court is directed to consider all motions by plaintiffs or purported class members to appoint lead plaintiff filed in response to any such notice.  Specifically, the Court "shall" appoint the presumptively "most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person or group of persons, that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Caccavale satisfies all three of these criteria and thus is entitled to the presumption that she is the most adequate plaintiff among Class members and, therefore, should be appointed Lead Plaintiff for the Class.

### A. Caccavale Is Willing to Serve as a Class Representative and Has Timely Filed This Motion to Be Appointed Lead Plaintiff.

On April 11, 2025, Pomerantz, counsel for the plaintiff in the Action, caused a notice to be published over *ACCESS Newswire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA (the "PSLRA Notice"), which announced that a securities class action had been filed against Defendants, and which advised investors in BigBear securities that they had 60 days from the date of the PSLRA Notice—*i.e.*, until June 10, 2025—to file a motion to be appointed as Lead Plaintiff. *See* Toll Decl., Ex. C.

Caccavale has timely filed the instant motion pursuant to the PSLRA Notice, and has attached a sworn Certification attesting that she is willing to serve as a representative for the Class

and to provide testimony at deposition and trial, if necessary. *See id.*, Ex. D. Accordingly, Caccavale satisfies the first requirement to serve as Lead Plaintiff of the Class.

**B.    Caccavale Has the "Largest Financial Interest" in the Action.**

The PSLRA requires a court to adopt a presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). To the best of her knowledge, Caccavale has the largest financial interest of any BigBear investor seeking to serve as Lead Plaintiff. For claims arising under Section 10(b) of the Exchange Act, courts frequently assess financial interest based upon the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered. No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 6, 1997). In accord with other courts nationwide,[4] these so-called *Lax* factors have been adopted and applied by courts in the Fourth Circuit. *See, e.g.*, *Tchatchou v. India Globalization Cap., Inc.*, No. 8:18-CV-03396-PWG, 2019 WL 1004591, at *4 (D. Md. Feb. 28, 2019); *Bousso v. Spire Glob., Inc.*, No. 1:24-CV-01458-MSN-WEF, 2024 WL 4873311, at *4 (E.D. Va. Nov. 21, 2024). Of the *Lax* factors, courts in the Fourth Circuit tend to emphasize approximate loss in assessing a lead plaintiff movant's financial interest within the meaning of the PSLRA. *See, e.g.*, *Bousso*, 2024 WL 4873311, at *4; *Palm Tran, Inc. - Amalgamated Transit Union Loc. 1577 Pension Plan v. Emergent Biosolutions Inc.*, No. PWG-21-1189, 2021 WL 6072812, at *4-5 (D. Md. Dec. 23, 2021).

---

[4] *See, e.g.*, *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *accord In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2007 WL 680779, at *6-8 (E.D.N.Y. Mar. 2, 2007).

During the Class Period, Caccavale: (1) purchased 134,262.431 shares of BigBear stock; (2) expended $716,822 on these purchases; (3) retained 11,937.431 of her shares of BigBear stock; and (4) as a result of the disclosures of the fraud, suffered losses of approximately $252,451 in connection with her Class Period transactions in BigBear securities. *See* Toll Decl., Ex. B. To the extent that Caccavale possesses the largest financial interest in the outcome of this litigation, she is the presumptive "most adequate" plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### C.    Caccavale Otherwise Satisfies the Requirements of Rule 23.

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."

In determining whether a lead plaintiff movant satisfies Rule 23's requirements, the Court need not raise its inquiry to the level required in ruling on a motion for class certification. Instead, at this stage of the litigation, only a *prima facie* showing of typicality and adequacy is required. *Chamblee v. Terraform Power, Inc.*, No. PX 16-981, 2016 WL 4039178, at *2 (D. Md. July 28, 2016); *Hirtenstein v. Cempra, Inc.*, Nos. 1:16cv1303 *et al.*, 2017 WL 2874588, at *4 (M.D.N.C. July 5, 2017).

"The requirement of typicality is satisfied if the [lead plaintiff] movant's claim arises from the same course of events as those of the other potential class members and relies on similar legal theories to prove the defendants' liability." *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 219 F.R.D. 343, 350 (D. Md. 2003) (citing *Cendant*, 264 F.3d at 265); *see also Johnson v. Pozen, Inc.*, No. 1:07CV599, 2008 WL 474334, at *2 (M.D.N.C. Feb. 15, 2008). Caccavale's claims are typical of those of the Class. Caccavale alleges, as do all Class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts and/or by omitting to disclose material facts concerning BigBear.

9

Caccavale, as did all Class members, purchased BigBear securities during the Class Period at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and was damaged upon the disclosure of those misrepresentations and/or omissions that drove BigBear's share price downward.  These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

"Adequate representation requires a finding that the purported class representative and its attorney are capable of pursuing the litigation and that neither has a conflict of interest with other class members." *Pozen*, 2008 WL 474334, at *2; *see also Terraform*, 2016 WL 4039178, at *2 (appointing lead plaintiffs that "demonstrated that they will 'fairly and adequately protect the interests of the class,' and 'ensure vigorous advocacy'" (quoting *Riordan v. Smith Barney*, 113 F.R.D. 60, 64 (N.D. Ill. 1986))); *Rice v. Genworth Fin. Inc.*, No. 3:17cv59, 2017 WL 3699859, at *7 (E.D. Va. Aug. 25, 2017).  As set forth in greater detail below, Caccavale has retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as this Action, and submits her choices of Pomerantz and Cohen Milstein to the Court for approval as Lead Counsel and Liaison Counsel, respectively, for the Class pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).  There is no evidence of antagonism or conflict between Caccavale's interests and the interests of the Class.  Caccavale has submitted a signed Certification declaring her commitment to protect the interests of the Class (*see* Toll Decl., Ex. D), and the significant losses incurred by Caccavale demonstrate that she has a sufficient interest in the outcome of this litigation to ensure vigorous advocacy.

Further demonstrating her adequacy, Caccavale has submitted a Declaration attesting to, *inter alia*, her background, her investing experience, her experience retaining and/or overseeing

10

counsel, her understanding of the responsibilities of a Lead Plaintiff pursuant to the PSLRA, her decision to seek appointment as Lead Plaintiff, and the steps she is prepared to take to prosecute this litigation on behalf of the Class. *See id.*, Ex. E.

### D. Caccavale Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses.

The presumption in favor of appointing Caccavale as Lead Plaintiff may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

(aa)    will not fairly and adequately protect the interests of the class; or

(bb)    is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Caccavale's ability and desire to fairly and adequately represent the Class has been discussed above. Caccavale is not aware of any unique defenses Defendants could raise that would render her inadequate to represent the Class. Accordingly, Caccavale should be appointed Lead Plaintiff for the Class.

## II.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to Court approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should only interfere with lead plaintiff's choice if necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *see also In re Microstrategy Sec. Litig.*, 110 F. Supp. 2d 427, 438 (E.D. Va. 2000) ("[A] district court should approve plaintiff's choice of lead counsel based solely on that counsel's competence, experience, and resources . . . ."); *Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel

11

retention." (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008))).

Here, Caccavale has selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the area of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in its firm resume submitted herewith. *See* Toll Decl., Ex. F. In overview, Pomerantz is a premier firm in the area of securities litigation based in New York, with offices in Chicago, Los Angeles, Paris, France, and Tel Aviv, Israel. *See id.* For more than 85 years, Pomerantz has represented defrauded investors. *See id.* As lead counsel in *In re Petrobras Securities Litigation*, No. 14-cv-09662 (S.D.N.Y.), Pomerantz recently secured a recovery of $3 billion on behalf of investors in the securities of Petrobras, the largest settlement ever in a class action involving a foreign issuer and the fifth largest class action settlement ever achieved in the United States. *See id.* Petrobras is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 1:06-cv-01825 (E.D.N.Y.), in June 2010, and the $90 million settlement in *Klein v. Altria Group, Inc. et al.*, No. 3:20-cv-00075 (E.D. Va.), in March 2022. *See id.*

Likewise, Cohen Milstein is well-qualified to serve as Liaison Counsel for the Class. As its firm resume reflects, Cohen Milstein has worldwide expertise as counsel for U.S. and non-U.S. institutional investors who have been the victims of securities malfeasance. By applying innovative legal theories and litigation strategies, it has recovered billions of dollars for its clients in some of the largest and most complex securities class actions. Significant securities settlements obtained by Cohen Milstein, acting as lead or co-lead counsel, include a $1 billion recovery in a securities class action against Wells Fargo & Co., the seventeenth-largest securities class action

recovery in U.S. history (*In re Wells Fargo & Co. Sec. Litig.*, No. 1:20-cv-04494-JLR-SN (S.D.N.Y.)); a $500 million settlement in the Countrywide mortgage-backed securities ("MBS") class action (*Maine State Ret. Sys. v. Countrywide Fin. Corp.*, No. 10-cv-00302-MRPMAN (C.D. Cal.)); a $275 million settlement in an MBS class action against the Royal Bank of Scotland (*New Jersey Carpenters Health Fund v. The Royal Bank of Scotland Group, plc*, No. 08-cv-05310-DAB-HBP (S.D.N.Y.)); $335 million in settlements in a class action against Residential Accredit Loans, Inc. and various investment banks (*New Jersey Carpenters Health Fund v. Residential Capital, LLC*, No. 08-cv-8781 (HB) (S.D.N.Y.)); and a $90 million settlement in a class action against MF Global (*Rubin v. MF Global, Ltd.*, No. 08-cv-2233 (VM) (S.D.N.Y.)), among others. *See* Toll Decl., Ex. G. Cohen Milstein's attorneys have experience in achieving substantial recoveries in class actions, and they have extensive familiarity with the Local Rules and practice norms of this District.

As a result of their extensive experience in litigation involving issues similar to those raised in the instant Action, Caccavale's choice of counsel have the skill, knowledge, expertise, resources, and experience that will enable them to prosecute this Action effectively and expeditiously. The Court may be assured that by approving Caccavale's selection of Pomerantz as Lead Counsel and Cohen Milstein as Liaison Counsel, the Class members will receive the best legal representation available. Thus, Caccavale respectfully urges the Court to appoint Pomerantz and Cohen Milstein to serve as Lead Counsel and Liaison Counsel, respectively, for the Class.

## CONCLUSION

For the foregoing reasons, Caccavale respectfully requests that the Court issue an Order: (1) appointing Caccavale as Lead Plaintiff for the Class; and (2) approving Caccavale's selections of Pomerantz as Lead Counsel and Cohen Milstein as Liaison Counsel for the Class.

Dated:  June 10, 2025

Respectfully submitted,

**COHEN MILSTEIN SELLERS & TOLL PLLC**

*/s/ Steven J. Toll*
Steven J. Toll (Va. Bar No. 15300)
Daniel S. Sommers
(*pro hac vice* application forthcoming)
S. Douglas Bunch
(*pro hac vice* application forthcoming)
1100 New York Avenue, N.W. Suite 500
Washington, D.C. 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
stoll@cohenmilstein.com
dsommers@cohenmilstein.com
dbunch@cohenmilstein.com

*Counsel for Lead Plaintiff Movant Mary Lou Caccavale and Proposed Liaison Counsel for the Class*

**POMERANTZ LLP**
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

*Counsel for Lead Plaintiff Movant Mary Lou Caccavale and Proposed Lead Counsel for the Class*

14

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically

to the registered participants as identified on the Notice of Electronic Filing on June 10, 2025.

*/s/ Steven J. Toll*
Steven J. Toll (Va. Bar No. 15300)

15