**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

|  |  |
|---|---|
| SEAN PRIEWE, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> BIGBEAR.AI HOLDINGS, INC., LOUIS R. BROTHERS, AMANDA LONG, KEVIN MCALEENAN and JULIE A. PEFFER, <br><br> Defendants. | Case No. 1:25-cv-00623-PTG-WEF |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF YAN ZENG AND NING SUN FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL**

Yan Zeng and Ning Sun (the "Movants") respectfully submit this Memorandum of Law in support of their Motion pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA") for an order: (1) appointing the Movants as Lead Plaintiff under 15 U.S.C. § 78u-4(a)(3)(B); (2) approving the Movants' selection of Block & Leviton LLP ("Block & Leviton") as Lead Counsel and Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") as Liaison Counsel for the putative class; and (3) granting such other relief as the Court deems just and proper (the "Motion").

## I. PRELIMINARY STATEMENT

Currently pending before this Court is a securities class action brought on behalf of a putative class of investors who purchased or otherwise acquired the securities of BigBear.ai Holdings, Inc. ("BigBear" or the "Company") common stock between March 31, 2022 and March 25, 2025, both dates inclusive (the "Class Period"). The Action seeks to recover from BigBear and certain of its senior officers for violations of the Exchange Act.

1

The PSLRA allows any member of the purported class to move for appointment as lead plaintiff and sets forth the process for determining which movant is the "most adequate plaintiff." *See* 15 U.S.C. § 78u-4(a)(3)(A)-(B). Under the PSLRA, the Court must appoint as lead plaintiff the movant who: (1) makes a timely motion within the PSLRA's 60-day deadline; (2) asserts the largest financial interest in the litigation; and (3) otherwise satisfies the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

The Movants respectfully submit that they are the presumptive "most adequate plaintiff" under the PSLRA and should be appointed as Lead Plaintiff. They have timely moved for lead plaintiff appointment. They are sisters-in-law who have collectively suffered losses of approximately $1,276,764.43 in connection with transactions in BigBear securities during the Class Period and believe they have the largest known financial interest in the relief sought by the class. *See* Declaration of Steven J. Toll in Support of Motion of Yan Zeng and Ning Sun for Appointment as Lead Plaintiff and Approval of Counsel ("Toll Decl."), Exs. B, C. In addition to asserting the largest financial interest, the Movants readily satisfy the relevant requirements of Rule 23 because their claims are typical of all members of the class and because they will fairly and adequately represent the class.

Lastly, the Movants have retained experienced and competent counsel to represent the class. As the "most adequate plaintiff" under the PSLRA, the Movants' selection of Block & Leviton as Lead Counsel and Cohen Milstein as Liaison Counsel for the class should be approved. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).

## II.  STATEMENT OF FACTS

BigBear is an artificial intelligence ("AI") company that offers national security, supply chain management, and digital identity and biometrics solutions. ¶2.[1] BigBear is headquartered in Tysons, Virginia.

In June 2021, BigBear.ai Holdings entered into a merger agreement with GigCapital4, Inc., a special purpose acquisition company ("SPAC"), GigCapital4 Merger Sub Corporation ("Merger Sub") and BBAI Ultimate Holdings. ¶3. The first step of the merger agreement involved Merger Sub merging into BigBear.ai Holdings, with BigBear.ai Holdings being the surviving entity ("First Merger"). *Id.* The second step immediately combined BigBear.ai Holdings with GigCapital4, with GigCapital4 being the surviving entity  (the "Second Merger," and together with the First Merger, the "Mergers," and together with the other transactions contemplated by the Merger Agreement, the "Business Combination"). *Id.* This entity adopted the name BigBear.ai Holdings, Inc. upon closing the transaction on December 7, 2021. *Id.* Following the completion of the Business Combination, BigBear issued $200 million in unsecured convertible notes set to mature on December 15, 2026 (the "2026 Notes"). ¶4. These notes carry a 6.0% annual interest rate, paid semi-annually (excluding any interest paid in shares), and were initially convertible into 17,391,304 shares of the Company's common stock at a conversion price of $11.50 per share. *Id.*

The Complaint alleges that Defendants' misstatements and omissions during the Class Period concealed from investors that BigBear's inadequate accounting review procedures led to the improper classification of and accounting for its 2026 Notes, resulting in misstated financial statements that would likely need restating and could delay the Company's SEC filings. *See* ¶7.

---

[1] Citations to "¶__" refer to paragraphs of the complaint (the "Complaint"), *Priewe v. BigBear.ai Holdings, Inc., et al.*, No. 1:25-cv-00623-PTG-WEF (E.D. Va. April 11, 2025), ECF No. 1.

Consistent with generally accepted accounting principles ("GAAP"), BigBear was required to account for the Business Combination and its issuance of the 2026 Notes in its financial reports in accordance with the Financial Accounting Standards Board's Accounting Standards Codification ("ASC"). ¶5. ASC 815-15 mandates that embedded derivatives like the conversion option in the 2026 Notes must be separated and accounted for independently if: (1) the economic characteristics and risks of the embedded derivative are not clearly and closely related to the economic characteristics of the host contract; (2) the hybrid instrument is not remeasured at fair value under otherwise applicable GAAP with changes in fair value reported in earnings as they occur; and (3) a separate freestanding instrument with the same terms as the embedded derivative would meet the definition of a derivative and would not qualify for a "derivative scope exception" (governed by the requirements of ASC 815-40). ¶6. If the embedded derivative qualifies for a scope exception, the company accounts for the entire instrument in accordance with other U.S. GAAP and is not required to separate it from the host contract. *Id.*

Throughout the Class Period, Defendants repeatedly stated that the Company's financial results had been prepared in accordance with GAAP and that its disclosure controls and procedures were effective and signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") attesting that "[t]he information contained in the [2021 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company." *See* ¶¶30-63. The Complaint alleges that these statements were materially false and/or misleading when made because they failed to disclose: a) BigBear maintained deficient accounting review policies related to the reporting and disclosure of certain non-routine, unusual, or complex transactions; b) as a result, the Company incorrectly determined that the conversion option within the 2026 Convertible Notes qualified for the derivative scope exception under ASC 815-40 and failed to bifurcate the

4

conversion option as required by ASC 815-15; c) accordingly, BigBear had improperly accounted for the 2026 Convertible Notes; d) the foregoing error caused BigBear to misstate various items in several of the Company's previously issued financial statements; e) as a result, these financial statements were inaccurate and would likely need to be restated; f) BigBear would require extra time and expense to correct the inaccurate financial statements, thereby increasing the risk that the Company would be unable to timely file certain financial reports with the SEC. ¶7.

The truth was partially revealed to the market on March 18, 2025, when BigBear disclosed in an SEC filing that management had identified a material error in the previously reported financial statements related to the accounting treatment of the Company's 2026 Notes. ¶9. This error required restatement of certain of the Company's financial statements since fiscal year 2021 and meant that the Company would be unable to timely file its Annual Report for 2024 (the "2024 10-K") "without unreasonable effort or expense." ¶8. On this news, BigBear's stock price fell $0.52 per share, or 14.9%, to close at $2.97 per share on March 18, 2025. ¶9.

Then, on March 25, 2025, BigBear disclosed in its 2024 10-K that it had misclassified the conversion option in its 2026 Notes, which did not meet the criteria for a derivative scope exception and therefore required bifurcation under ASC 815-15. ¶10. The Company restated its financial statements to correct this error and disclosed a material weakness in internal controls due to inconsistent application of its technical accounting review policies for complex transactions. ¶10. On this news, BigBear's stock price fell $0.32 per share, or 9.11%, to close at $3.19 per share on March 26, 2025. ¶11.

Due to these alleged misrepresentations and omissions, the Movants and other Class members suffered significant losses and damages.

## III.  ARGUMENT

### A.    The Movants Should Be Appointed as Lead Plaintiff

The Movants should be appointed as Lead Plaintiff because, to their knowledge, they have the largest financial interest in the relief sought by the class and otherwise satisfy the requirements of Rule 23.

The PSLRA establishes a procedure for appointment of lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1). First, the plaintiff who files the initial action must publish a notice to the class, within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C § 78u-4(a)(3)(A)(i). Within 60 days after publication of the notice (*i.e.*, today, June 10, 2025), any person who is a member of the proposed class may apply to the Court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. 15 U.S.C. § 78u-4(a)(3)(A)(i)(II).

Next, the PSLRA provides that, within 90 days after publication of the notice, the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the members of the class the Court determines to be most capable of adequately representing the interests of class members. 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA requires the Court to adopt a presumption that the most adequate plaintiff is the movant that:

> (aa) has either filed the complaint or made a motion in response to a notice [published by a complainant];
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

The Movants satisfy each of these requirements, and the Court should therefore appoint them as Lead Plaintiff.

### 1.      The Motion Is Timely

The statutorily-required notice of this action was published on April 11, 2025, advising class members of: (1) the pendency of the action; (2) the claims asserted therein; and (3) the right to move the Court to be appointed as lead plaintiff by June 10, 2025. *See* Toll Decl., Ex. A.

Pursuant to the provisions of the PSLRA and within the required time frame after publication of the notice, the Movants timely move this Court to be appointed as Lead Plaintiff on behalf of all members of the class. Each of the Movants has signed a certification pursuant to the PSLRA, Toll Decl., Ex. B, and Movants submit a joint declaration in support of their motion, Toll Decl., Ex. D. The Movants have selected and retained qualified counsel to represent themselves and the proposed class. *See* Toll Decl., Exs. E, F. Accordingly, the Movants are entitled to have their application for appointment as Lead Plaintiff and selection of Lead Counsel considered and approved by the Court.

### 2.      The Movants Have a Substantial Financial Interest in the Relief Sought by the Class

According to 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), the Court shall adopt the rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." During the Class Period, as evidenced by the Movants' accompanying signed certifications and loss charts, the Movants collectively incurred substantial losses—a total of $1,276,764.43. Toll Decl., Exs. B, C. At the time of this

7

filing, the Movants believe that they possess the largest "financial interest in the relief sought by the class." *Knurr v. Orbital ATK, Inc.*, 220 F. Supp. 3d 653, 657-58 (E.D. Va. 2016). Accordingly, the Movants are entitled to the presumption that they are the most adequate lead plaintiff.

### 3. The Movants Otherwise Satisfy Rule 23's Requirements.

In addition to possessing a significant financial interest, a presumptive lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); *see also Switzenbaum v. Orbital Scis. Corp.*, 187 F.R.D. 246, 250 (E.D. Va. 1999). Rule 23 requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class; and [that] the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(3)-(4). To be appointed lead plaintiff, the Movants need only make "a preliminary showing that [they have] claims which are typical of those of the putative class and that [they have] the capacity to provide adequate representation for others." *Grad v. Ironnet, Inc.*, 2022 WL 2789899, at *3 (E.D. Va. July 15, 2022) (quoting *Switzenbaum*, 187 F.R.D. at 250).

Typicality requires that "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001). Like all class members, the Movants purchased BigBear stock during the Class Period at allegedly inflated prices and suffered financial losses as a result. *See DeLuca v. Instadose Pharma Corp.*, 2022 WL 3020417, at *5 (E.D. Va. July 29, 2022) (movant typical where it bought defendant's stock "during the period of time specified in the Complaint at prices artificially inflated by allegedly false or misleading statements and suffer[ed] financial losses as a result"); Toll Decl., Exs. B, C.

8

The Movants will adequately protect the interests of the class. Adequacy under Rule 23 requires that the lead plaintiff "(i) does not have interests that are adverse to the interests of the class, (ii) has retained competent counsel, and (iii) is otherwise competent to serve as class representative." *MicroStrategy*, 110 F. Supp. 2d at 435-36. The Movants have a substantial financial interest in the case, and they are committed to vigorously pursuing claims on behalf of the class. As discussed below, they have selected qualified counsel, highly experienced in securities litigation. The Movants consist of two closely related individuals: Yan Zeng and Ning Sun are sisters-in-law who have known each other for thirty years. Toll Decl., Ex. D. They have submitted a sworn joint declaration with this motion providing information about themselves, their communications, and their desire, willingness, and ability to serve as lead plaintiff. *Id.* Moreover, the Movants are not aware of any conflicts between their claims and those asserted by the class.

The Movants' substantial financial interest, alignment with class interests, and selection of highly qualified counsel demonstrate that they *prima facie* satisfy the relevant Rule 23 prerequisites at this stage of the litigation.

**B.    The Court Should Approve the Movants' Selection of Counsel**

Under the PSLRA, the proposed lead plaintiff shall, subject to Court approval, select and retain counsel to represent the class he or she seeks to represent. 78u-4(a)(3)(B)(v). The Court shall approve lead plaintiff's selection of counsel "based solely on that counsel's competence, experience, and resources." *Microstrategy*, 110 F. Supp. 2d at 439. The Movants have selected Block & Leviton, a firm with substantial experience in the prosecution of shareholder and securities class actions to serve as Lead Counsel. *See* Toll Decl., Ex. E. As noted by one district court:

9

> While I recognize that each counsel is well qualified, I am particularly persuaded by [Block & Leviton's] experience in large securities class actions, such as its representation of plaintiffs in *In re BP Securities Litigation* (S.D. Tex.), *In re Google Inc. Class C Shareholder Litig.* (Del. Ch. Ct.), and *In re Volkswagen "Clean Diesel" Marketing, Sales and Products Liability Litigation* (N.D. Cal.). I find the experience garnered from such representations will benefit the shareholder in this suit.

*Thieffry v. Synchronoss Tech., Inc.*, No. 3:17-cv-07173-FLW-LHG (D.N.J. May 24, 2018) (ECF No. 21).

Courts across the country have likewise recognized Block & Leviton's adequacy and appointed the firm as lead counsel. *See, e.g.*, *Amberber v. EHang Holdings Ltd.*, 2022 WL 409096, at *5 (S.D.N.Y. Feb. 10, 2022) ("Block & Leviton LLP can capably represent the class here, given the firm's experience in litigating class action lawsuits."); *Bardaji v. Match Grp., Inc.*, 2023 WL 3624774, at *3 (D. Del. May 24, 2023) (noting that Block & Leviton "has substantial experience in securities fraud litigation [and] has obtained a significant number of sizeable settlements in these cases over the years"); *see also In re Lyft, Inc. Sec. Litig.*, 2023 WL 5068504, at *9 (N.D. Cal. Aug. 7, 2023) (approving $25 million settlement and stating, "Block & Leviton are highly experienced lawyers with expertise in securities class actions").

Regarding Liaison Counsel, the Movants have selected Cohen Milstein, a highly qualified law firm that have served as counsel in numerous securities class actions in this District. *See, e.g.*, *In re Mills Corp. Sec. Litig.*, No. 06-cv-77 (E.D. Va.) (served as liaison counsel and achieved a $202.75 million recovery for investors); *In re Lumber Liquidators Holdings, Inc. Sec. Litig.*, No. 13-cv-157 (E.D. Va.) (served as liaison counsel and achieved a $45 million recovery for investors); *Plymouth Cty. Ret. Sys. v. GTT Commc'ns, Inc.*, No. 19-cv-982 (E.D. Va.) (served as liaison counsel and achieved a $25 million recovery for investors); *see also* Toll Decl., Ex. F (Cohen Milstein's firm résumé).

Accordingly, the Court should approve the Movants' selection of Block & Leviton as Lead Counsel and Cohen Milstein as Liaison Counsel for the Class.

## IV.  CONCLUSION

The Movants have satisfied each of the PSLRA's requirements for appointment as lead plaintiff. As such, they respectfully request that the Court: (1) appoint the Movants as lead plaintiff; (2) approve the Movants' selection of Block & Leviton as Lead Counsel and Cohen Milstein as Liaison Counsel; and (3) grant such other relief as the Court may deem just and proper.

DATED: June 10, 2025

Respectfully submitted,

*/s/ Steven J. Toll*

Steven J. Toll (Va. Bar No. 15300)
Julie Goldsmith Reiser
S. Douglas Bunch
**COHEN MILSTEIN SELLERS
  & TOLL PLLC**
1100 New York Avenue NW, Suite 800
Washington, DC 20005
Tel.: (202) 408-4600
Fax: (202) 408-4699
stoll@cohenmilstein.com
jreiser@cohenmilstein.com
dbunch@cohenmilstein.com

*Liaison Counsel for the Movants*

*/s/ Jeffrey Block*

Jeffrey C. Block (*pro hac vice* forthcoming)
Jacob A. Walker (*pro hac vice* forthcoming)
**BLOCK & LEVITON LLP**
260 Franklin Street, Suite 1860
Boston, MA 02110
Tel.: (617) 398-5600
Fax: (617) 507-6020
jeff@blockleviton.com
jake@blockleviton.com

*Counsel for the Movants and Proposed Lead Counsel for the Class*

11

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of June 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send notification to counsel of record.

/s/ Steven J. Toll
Steven J. Toll (Va. Bar No. 15300)
**COHEN MILSTEIN SELLERS**
**& TOLL PLLC**
1100 New York Avenue NW, Suite 800
Washington, DC 20005
Tel.: (202) 408-4600
Fax: (202) 408-4699
stoll@cohenmilstein.com