Back to the Newsroom

   



# Pomerantz Law Firm Announces the Filing of a Class Action Against BigBear.ai Holdings, Inc. and Certain Officers - BBAI

Friday, 11 April 2025 05:45 PM

Topic: Class Action

**NEW YORK CITY, NY / [ACCESS Newswire](#) / April 11, 2025 /** Pomerantz LLP announces that a class action lawsuit has been filed against BigBear.ai Holdings, Inc. ("BigBear" or the "Company") (NYSE:BBAI) and certain officers. The class action, filed in the United States District Court for the Eastern District of Virginia, and docketed under 25-cv-00623 is on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired BigBear securities between March 31, 2022 and March 25, 2025, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the

Case 1:25-cv-00623-PTG-WEF    Document 33-1    Filed 06/10/25    Page 2 of 5 PageID# 557

"Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

If you are an investor who purchased or otherwise acquired BigBear securities during the Class Period, you have until June 10, 2025 to ask the Court to appoint you as Lead Plaintiff for the class. A copy of the Complaint can be obtained at www.pomerantzlaw.com. To discuss this action, contact Danielle Peyton at newaction@pomlaw.com or 646-581-9980 (or 888.4-POMLAW), toll-free, Ext. 7980. Those who inquire by e-mail are encouraged to include their mailing address, telephone number, and the number of shares purchased.

### [Click here for information about joining the class action]

BigBear is an artificial intelligence - driven technology solutions company. The Company purportedly offers national security, supply chain management, and digital identity and biometrics solutions.

In June 2021, BigBear.ai Holdings entered into a merger agreement (the "Merger Agreement") with GigCapital4, Inc. ("GigCapital4"), a special purpose acquisition company, GigCapital4 Merger Sub Corporation ("Merger Sub"), and BBAI Ultimate Holdings. Pursuant to the Merger Agreement, Merger Sub first merged with and into BigBear.ai Holdings, with BigBear.ai Holdings being the surviving entity in the merger (the "First Merger"). Then, immediately following the First Merger, BigBear.ai Holdings merged with and into GigCapital4, with GigCapital4 being the surviving entity in the merger (the "Second Merger," and together with the First Merger, the "Mergers," and together with the other transactions contemplated by the Merger Agreement, the "Business Combination"). On December 7, 2021, the Mergers were consummated and GigCapital4, Inc. was renamed as BigBear.ai Holdings, Inc.

Upon completion of the Business Combination, BigBear issued $200 million of unsecured convertible notes-debt instruments that can be converted into equity at a future date-due to mature on December 15, 2026 (the "2026 Convertible Notes" or "2026 Notes"). The 2026 Convertible Notes bear interest at a rate of 6.0% per annum, payable semi-annually, and not including any interest payments that are settled with the issuance of shares, and were convertible into 17,391,304 shares of the Company's common stock at an initial Conversion Price of $11.50. Convertible notes are often classified as long-term debt and as such, consistent with generally accepted accounting principles ("GAAP"), they must be accounted for in a company's quarterly and annual reports as liabilities until they reach maturity, at which point they either convert to equity or are repaid as principal and interest.

6/5/25, 9:48 AM
Pomerantz Law Firm Announces the Filing of a Class Action Against BigBear.ai Holdings, Inc. and Certain Officers - BBAI

Case 1:25-cv-00623-PTG-WEF    Document 33-1    Filed 06/10/25    Page 3 of 5 PageID# 558

BigBear uses the Financial Accounting Standards Board's Accounting Standards Codification ("ASC")-the single source of United States ("U.S.") GAAP-to account "for all transactions and events in which it obtains control over one or more other businesses (even if less than 100% ownership is acquired), to recognize the fair value of all assets and liabilities assumed and to establish the acquisition date fair value as of the measurement date." Accordingly, because the Business Combination qualified as such a transaction, BigBear was required to account for it, and its issuance of the 2026 Convertible Notes therewith, in accordance with the ASC.

Under ASC 815-15, an entity is required to bifurcate and separately account for a feature or derivative embedded within a host contract (such as the conversion option within the 2026 Convertible Notes) if: (1) the economic characteristics and risks of the embedded derivative are not clearly and closely related to the economic characteristics of the host contract; (2) the hybrid instrument is not remeasured at fair value under otherwise applicable GAAP with changes in fair value reported in earnings as they occur; and (3) a separate freestanding instrument with the same terms as the embedded derivative would meet the definition of a derivative and would not qualify for a "derivative scope exception." An embedded derivative may qualify for a scope exception if, for example, it meets the requirements of ASC 815-40, which covers contracts issued or held by an entity that are both indexed to its own stockand classified in stockholders' equity in its statement of financial position. If an embedded feature qualifies for a derivative scope exception, the entity does not separate it from the host contract and the entity accounts for the entire instrument (assuming no other embedded features require bifurcation) in accordance with other U.S. GAAP. Therefore whether BigBear was required to bifurcate the conversion option within the 2026 Convertible Notes as a derivative was dependent, in part, upon the conversion option's qualification for a derivative scope exception.

The complaint alleges that, throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) BigBear maintained deficient accounting review policies related to the reporting and disclosure of certain non-routine, unusual, or complex transactions; (ii) as a result, the Company incorrectly determined that the conversion option within the 2026 Convertible Notes qualified for the derivative scope exception under ASC 815-40 and failed to bifurcate the conversion option as required by ASC 815-15; (iii) accordingly, BigBear had improperly accounted for the 2026 Convertible Notes; (iv) the foregoing error caused BigBear to misstate various items in several of the Company's previously issued financial statements; (v) as a result, these financial statements were inaccurate and would likely need to be restated; (vi) BigBear would require extra time and expense to correct the inaccurate financial statements, thereby

increasing the risk that the Company would be unable to timely file certain financial reports with the U.S. Securities and Exchange Commission ("SEC"); and (vii) as a result, the Company's public statements were materially false and misleading at all relevant times.

On March 18, 2025, BigBear disclosed in a filing with the SEC that certain of the Company's financial statements since fiscal year 2021 should no longer be relied upon and would be restated. Specifically, management identified a material error in the previously reported financial statements related to the accounting treatment of the Company's 2026 Convertible Notes. In addition, BigBear revealed that, as a result of the foregoing, the Company would be unable to timely file its Annual Report for 2024 (the "2024 10-K") "without unreasonable effort or expense."

On this news, BigBear's stock price fell $0.52 per share, or 14.9%, to close at $2.97 per share on March 18, 2025.

Then, post-market on March 25, 2025, BigBear filed its 2024 10-K. In discussing the error in the previously reported financial statements, the 2024 10-K stated, in relevant part, that a "conversion option embedded within the 2026 Notes was incorrectly deemed to be eligible for a scope exception from the bifurcation requirements of ASC 815-15 and therefore requires bifurcation as a derivative ('*2026 Notes Conversion Option*')" and that "[t]he 2026 Notes include certain adjustments to the conversion rate that violate the 'fixed-for-fixed' criteria described in [ASC] 815-40." As a result, the consolidated financial statements were restated "to reflect the issuance of the 2026 Notes Conversion Option at fair value as of December 7, 2021 and the subsequent remeasurement to fair value at each reporting date." The 2024 10-K further revealed that the adjustments reflected in the restatements related to, among other items, accumulated deficit, derivative liabilities, deferred tax liabilities, net loss, interest expense, and amortization of debt issuance discount. Finally, the 2024 10-K disclosed that the Company had identified a material weakness in its internal control over financial reporting-specifically, that BigBear had not "consistently executed [its] technical accounting review policies, inclusive of the application of certain interpretations subject to significant judgement or differences in interpretation, at a precision level sufficient to achieve complete, accurate and timely financial accounting, reporting and disclosures of certain non-routine, unusual, or complex transactions."

On this news, BigBear's stock price fell $0.32 per share, or 9.11%, to close at $3.19 per share on March 26, 2025.

Pomerantz LLP, with offices in New York, Chicago, Los Angeles, London, Paris, and Tel Aviv, is acknowledged as one of the premier firms in the areas of corporate, securities, and antitrust class litigation. Founded by the late Abraham L. Pomerantz, known as the

dean of the class action bar, Pomerantz pioneered the field of securities class actions. Today, more than 85 years later, Pomerantz continues in the tradition he established, fighting for the rights of the victims of securities fraud, breaches of fiduciary duty, and corporate misconduct. The Firm has recovered billions of dollars in damages awards on behalf of class members. See www.pomlaw.com.

Attorney advertising. Prior results do not guarantee similar outcomes.