# Supplemental Exhibit 2

**Issuer Name: BigBear.ai Holdings, Inc**
**Fund Name:  BBAI Ultimate Holdings, LLC**
**Symbol: BBAI**

### Rule 10b5-1 Sales Plan, Client Representations, and Sales Instructions

The undersigned, BBAI Ultimate Holdings, LLC (the "Fund"), as of May 7, 2024 (the "Adoption Date"), establishes this Sales Plan ("Plan") in order to sell shares of the common stock,  $0.0001 par value per share ("Shares"), of BigBear.ai Holdings, Inc. ("Issuer"), pursuant to the requirements of Rule 10b5-1 under the Securities Exchange Act of 1934, as amended ("Exchange Act").  The Fund requests that Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch") execute the Plan as follows:

1.    **Sales Instructions**

Merrill Lynch is authorized to execute transactions in accordance with the SEC Rule 10b5-1 Sales Instruction – Annex ("Sales Instruction"), attached as Annex B hereto. With respect to the Shares to be sold under this Plan, including but not limited to Shares to be issued pursuant to the vest or exercise of an equity award such as the vest of restricted stock or the exercise of a stock option, the Fund agrees that the Fund is responsible for any and all dividends, rights or payments of any kind that are or may become payable to any purchaser of the Shares sold under this Plan prior to the registration of the Shares in the name of Merrill Lynch or its nominee, and, if the Fund is holding all or some of these Shares, the Fund agrees that the Fund shall not be entitled to such dividends, rights or payments prior to the issuance of the Shares. The Fund agrees to pay or deliver to Merrill Lynch upon demand, any and all funds, securities, dividends or distributions due to it, if, for any reason, the Shares to be issued and sold under this Plan are not promptly delivered to Merrill Lynch.

2.    **Execution, Average Pricing and Pro Rata Allocation of Sales**

The Fund agrees and acknowledges that:

2.1    If the Fund's order to sell Shares pursuant to the Plan, whether market or limit, is handled by a Merrill Lynch trading desk, the Fund's order shall be handled as "not held." A "not held" or "working order" permits a Merrill Lynch trader to use reasonable brokerage judgment, exercising price and time discretion, as to when to execute the order.  This provision shall only apply to orders handled by a Merrill Lynch trading desk.

2.2    Merrill Lynch may execute the Fund's order:  (a) in a single transaction or multiple transactions during the course of the trading day, or (b) it may aggregate the Fund's order with other orders for other sellers of the Issuer's securities that may or may not have been accepted pursuant to a Rule 10b5-1 sales plan, execute them as a block or in multiple smaller transactions, and allocate an average price to each seller.

2.3    When orders are aggregated, Merrill Lynch shall allocate the proceeds of shares sold pro rata among the sellers, based on the ratio of (x) the shares to be sold and (y) the sum of the proceeds of all shares sold, and Merrill Lynch will provide each seller an "average price confirmation" that identifies the amount of securities sold for the applicable seller together with an average price for sales.

3.    **Stock Splits/Reincorporation/Reorganizations**

1

**Issuer Name: BigBear.ai Holdings, Inc**
**Fund Name: BBAI Ultimate Holdings, LLC**
**Symbol: BBAI**

## 3.    Stock Splits/Reincorporation/Reorganizations

**3.1**    In the event of a stock split or reverse stock split, the quantity and price at which the Shares are to be sold will be adjusted proportionately.

**3.2**    In the event of a stock dividend or spin-off, the quantity and price at which the Shares are to be sold will be adjusted as instructed by the Issuer. Any adjustment shall only become effective upon receipt by Merrill Lynch of written notice from the Issuer as to the occurrence of the dividend or spin-off, as well as specific instructions as to the adjustment to the quantity and price at which Shares are to be sold.

**3.3**    In the event of a reincorporation or other corporate reorganization resulting in an automatic share-for-share exchange of new shares of the Issuer for the Shares subject to the Plan, then the new shares will automatically replace the Shares.

## 4.    Account Credit

In the event any scheduled sale of Shares is not executed as provided for in Section 1 (or Section 7, if applicable) of the Plan, upon Merrill Lynch's knowledge of such event, Merrill Lynch shall sell Shares that should have been sold as soon as reasonably practicable, and will credit the Fund's account as if such sale had been executed as instructed in Section 1 (or Section 7, if applicable).

## 5.    Compliance with Rule 144 and Rule 145

**5.1**    The Fund understands and agrees that if the Fund or any entity or individual acting as the Fund's general partner, is an affiliate or control person for purposes of Rule 144 under the Securities Act of 1933, as amended ("Securities Act"), or if the Shares subject to the Plan are restricted securities subject to limitations under Rule 144 or eligible for resale under Rule 145, then all sales of Shares under the Plan will be made in accordance with the applicable provisions of Rule 144.

**5.2**    Merrill Lynch will conduct sales pursuant to Rule 144 or Rule 145 if appropriate, including applying Rule 144 volume limitations in the aggregate for sales under the Plan and, to the extent Merrill Lynch is notified in writing in the manner set forth in this Plan of such sales prior thereto, sales made by any entity or individual acting as the Fund's general partner who may be deemed an "affiliate" of the Issuer (or who otherwise is required to aggregate sales of Shares with the Fund for purposes of the Rule 144 volume limitations), which entities and individuals currently include: AE Industrial Partners Fund II, LP, AE Industrial Partners Fund II-A, LP, AE Industrial Partners Fund II-B, LP, AeroEquity GP, LLC and AE Industrial Partners Fund II GP. The Fund will provide the Venture Services Group at Merrill Lynch prior notice of any sales by any of the entities or individuals acting as the Fund's general partner and who may be deemed an affiliate of the Issuer (or who otherwise is required to aggregate sales of Shares with the Fund for purposes of the Rule 144 volume limitations). Notwithstanding the foregoing, the Fund will cause any such general partner of the Fund to refrain from selling any Shares to the extent such sales would in effect, by virtue of the Rule 144 volume limitations, prevent any sales of Shares under this Plan pursuant to the Sales Instruction.

2

**Issuer Name: BigBear.ai Holdings, Inc**
**Fund Name: BBAI Ultimate Holdings, LLC**
**Symbol: BBAI**

    **5.3**    The Fund will notify the Venture Services Group at Merrill Lynch prior to taking any action or to causing any other person or entity to take any action that would require the Fund to aggregate sales of Shares pursuant to Rule 144; and not to take any action that would cause the sales of Shares under the Plan not to comply with Rule 144 or Rule 145.

    **5.4**    Check the following that applies:

[ ]    The Fund will complete and file with the U.S. Securities and Exchange Commission's Electronic Data Gathering, Analysis, and Retrieval system ("EDGAR") on behalf of the Fund any Forms 144 necessary to effect sales under the Plan.

[X]    The Fund requests and authorizes Merrill Lynch to complete and file with EDGAR on behalf of the Fund any Forms 144 necessary to effect sales under the Plan.

    **5.5**    The Fund represents and warrants that the Fund has an account with EDGAR for filing Form 144 for sales of Shares under this Plan and the Fund agrees to maintain this account with EDGAR for the term of this Plan so that Form 144 may be filed for sales of Shares under this Plan. If the Fund requested above that Merrill Lynch complete and file with EDGAR on behalf of the Fund Form 144, the Fund has provided Merrill Lynch, or will provide Merrill Lynch prior to any sale of Shares, the Fund's EDGAR access codes (i.e., EDGAR account number (CIK) and CIK Confirmation Code (CCC)) and the Issuer's EDGAR account number (CIK).

    **5.6**    If the Fund intends not to file, or fails to timely file, Form 144 with EDGAR for sales of Shares under this Plan or the Fund intends not to maintain the Fund's account with EDGAR so that Form 144 may not be filed, the Fund agrees to immediately notify Merrill Lynch so that sales of Shares under this Plan may be suspended or corrected, as applicable.

    **5.7**    If appropriate, the Fund understands and agrees that the Fund, or Merrill Lynch as applicable, will either (a) make one Form 144 filing at the beginning of each weekly period commencing with the date of the first sale made in connection with this Plan and assuming that Merrill Lynch reasonably believes that sales will be effected during such weekly period under this Plan or (b) file Form 144 for sales made in connection with the Plan.

    **5.8**    A Form 144 shall be filed by the Fund, or Merrill Lynch as applicable, for all applicable sales pursuant to this Plan and shall indicate that the sales are made pursuant to this Plan, including the Adoption Date. The Fund acknowledges and agrees that by indicating the Adoption Date on the Form 144 and signing and filing the Form 144 on behalf of the Fund that, as of the Adoption Date, the Fund represents the Fund does not know any material adverse information in regard to the current and prospective operations of the Issuer of the securities to be sold which has not been publicly disclosed.

## 6.    Representations, Warranties and Covenants

    In consideration of Merrill Lynch accepting orders to sell securities under this Plan, the Fund makes the following representations, warranties and covenants:

3

**Issuer Name: BigBear.ai Holdings, Inc**
**Fund Name: BBAI Ultimate Holdings, LLC**
**Symbol: BBAI**

**6.1** As of the Adoption Date,

*(Please check the box below that applies to you. Your selection will impact the cooling-off period under Rule 10b5-1(c) that applies to your sale of Shares):*

[X] The Fund is a director or officer (as defined in Rule 16a-1(f) under the Exchange Act) of the Issuer.

[ ] The Fund is **not** a director or officer (as defined in Rule 16a-1(f) under the Exchange Act) of the Issuer.

**6.2** On the Adoption Date,
1. Neither the Fund nor any entity or individual authorizing or directing the Fund to enter into this Plan, including the Fund's general partner, are aware of any material nonpublic information about the Shares or Issuer;
2. The Fund is adopting the Plan in good faith and not as part of a plan or scheme to evade the prohibitions of Rule 10b-5 under the Exchange Act; and
3. The Fund is adopting the Plan in compliance with the requirements of Rule 10b5-1 under the Exchange Act ("Rule 10b5-1").

**6.3** The Fund has no other outstanding contract, instruction, or plan that would qualify for the affirmative defense under Rule 10b5-1(c)(1) for purchases or sales of the Issuer's securities, including Shares, on the open market ("Other Plan"). While this Plan is in effect, the Fund will not, enter into an additional Other Plan, other than a contract, instruction, or plan permitted under Rule 10b5-1(c)(1)(ii)(D)(2).

**6.4** If this Plan is a single trade arrangement as defined in Rule 10b5-1(c)(1)(ii)(E) ("Single Trade Plan"), the Fund has not entered into a Single Trade Plan during the prior 12-month period.

**6.5** The Fund has consulted with legal counsel and other advisors in connection with its decision to enter into the Plan and has confirmed that the Plan meets the criteria set forth in Rule 10b5-1. The Fund has not received or relied on any representations by Merrill Lynch regarding the Plan's compliance with Rule 10b5-1.

**6.6** The Fund owns all Shares that are subject to the Plan free and clear of liens or encumbrances of any kind, and/or the Fund will own all such Shares free and clear of liens or encumbrances of any kind at the time of their Sale as provided for in this Plan. There are no restrictions imposed on the Fund, the Shares or the Issuer that would prevent Merrill Lynch or the Fund from complying with the Plan.

**6.7** While the Plan is in effect, except as provided in the Plan, the Fund will not engage in offsetting or hedging transactions in violation of Rule 10b5-1; and will notify Merrill Lynch in advance of any sales or purchases of, or derivative transactions on, any of the Issuer's securities initiated by the Fund.

4

**Issuer Name: BigBear.ai Holdings, Inc**
**Fund Name: BBAI Ultimate Holdings, LLC**
**Symbol: BBAI**

**6.8**    While the Plan is in effect, neither the Fund nor any entity or individual acting as the Fund's general partner will disclose to any employee of Merrill Lynch, including the Fund's Private Wealth Advisor or Financial Advisor, any material nonpublic information concerning the Shares or the Issuer.

**6.9**    The Fund will act in good faith with respect to the Plan, including not attempting to exercise any influence over how, when or whether to effect sales of Shares.

**6.10**    The Plan does not violate the Issuer's insider trading policies.

**6.11**    Subject to Section 5, the Fund agrees to make or cause to be made all filings required under the Securities Act and/or the Exchange Act, including under Rule 144 and pursuant to Section 13 and Section 16 of the Exchange Act, and any other filings necessary provided however, that Merrill Lynch shall be responsible for the preparation and filing of Forms 144 to the extent set forth in Section 5.

**6.12**    As to delivery requirements:

1.    Prior to the date of execution of any sales specified under the Plan, the Fund agrees to have delivered into the custody of Merrill Lynch (i) the total amount of the Shares that may be sold pursuant to the Plan or, if applicable, a physical certificate or a direct registration statement evidencing the total amount of the Shares that may be sold pursuant to the Plan, and (ii) all transfer documents and other authorizations required for Merrill Lynch to effect settlement of sales of such Shares on the Fund's behalf.

2.    The Fund agrees that Merrill Lynch's obligation to execute sales under the Plan is conditioned on the satisfaction of the foregoing delivery requirements.

**6.13**    The Fund agrees to inform Merrill Lynch as soon as possible of any of the following:

1.    any subsequent restrictions imposed on the Fund due to changes in the securities (or other) laws or of any contractual restrictions imposed on the Issuer that would prevent Merrill Lynch or the Fund from complying with the Plan, and

2.    the occurrence of any event as set forth in the Plan that would cause the Plan to be suspended or terminated under Section 7 or Section 8 of the Plan, respectively.

**6.14**    The Fund is duly organized, formed or incorporated, as the case may be, and is authorized, empowered and qualified to execute this Plan. The individual signing this Plan and any agreements contemplated hereby and thereby on the Fund's behalf has been duly authorized to do so.

**6.15**    The Fund has provided, or caused the Issuer to provide, Merrill Lynch with a certificate completed by the Issuer, substantially in the form of Annex A hereto ("Issuer Certificate").

5

**Issuer Name: BigBear.ai Holdings, Inc**
**Fund Name: BBAI Ultimate Holdings, LLC**
**Symbol: BBAI**

7. **Suspension**

    7.1    Sales of Shares pursuant to Section 1 above shall be suspended where:

        1.    Merrill Lynch determines that a suspension, halt or delay of trading of Shares on securities exchanges, alternative trading systems, and other markets it accesses to sell Shares (each a "Trading System") prevents Merrill Lynch from selling Shares under this Plan, such as when there is a market-wide regulatory halt or delay. For the avoidance of doubt, if there is a non-regulatory halt or delay of trading on a Trading System, such as a halt or delay of trading due to a systems issue specific to that Trading System, Merrill Lynch may sell Shares under this Plan on another Trading System that is not affected by the halt or delay;

        2.    there is insufficient demand for any or all of the Shares at or above the specified price (e.g., the specified price met but all Shares could not be sold at or above the specified price);

        3.    Merrill Lynch, in its sole discretion, determines that there is a legal, regulatory or contractual reason why it cannot effect a sale of Shares;

        4.    Merrill Lynch is notified in writing by the Issuer that a sale of Shares should not be effected due to legal, regulatory or contractual restrictions applicable to the Issuer or to the Fund (including without limitation, Regulation M) or other material adverse consequence to the Issuer or the Fund (such notice merely stating that there is a restriction applicable to the Issuer or the Fund without specifying the reasons for the restriction). In case of this paragraph 4, Merrill Lynch shall suspend sales promptly upon notice.;

        5.    Merrill Lynch is notified in writing by the Issuer that (i) in the case of Shares being sold that will be acquired pursuant to a registration statement filed under the Securities Act, the registration statement has terminated, been suspended, expired or is otherwise unavailable.

    7.2    Merrill Lynch will resume sales in accordance with the Plan as promptly as practicable after (a) Merrill Lynch receives notice in writing from the Issuer that it may resume sales in accordance with Section 1 of the Plan in the case of the occurrence of an event described in 7.1.4 or 7.1.5 above or (b) Merrill Lynch determines, in its sole discretion, that it may resume sales in accordance with the Plan in the case of the occurrence of an event described in 7.1.1, 7.1.2 or 7.1.3 above.

    7.3    Shares allocated under the Plan for sale during a period that has elapsed due to a suspension under this Section will be carried forward to be sold with the next amount of Shares to be sold in accordance with Section 1 of the Plan. In the event Section 1 of the Plan provides for an amount of Shares to be sold during a given period pursuant to a limit order, Shares that would otherwise be permitted to be sold during that period, shall, upon lapse of the suspension, nonetheless be carried forward to be sold with the next amount of Shares to be sold in accordance with Section 1 of the Plan.

**Issuer Name: BigBear.ai Holdings, Inc**
**Fund Name: BBAI Ultimate Holdings, LLC**
**Symbol: BBAI**

**7.4**    Merrill Lynch is released from all liability in connection with any suspension of sales, including, but not limited to, liability for the loss of market value.

## 8.    Termination

The Plan shall terminate on the earliest to occur of the following:

**8.1**    the end date listed in the Sales Instruction;

**8.2**    the completion of all sales contemplated in Section 1 of the Plan;

**8.3**    the Fund's or Merrill Lynch's reasonable determination that: (a) the Plan does not comply with Rule 10b5-1 or other applicable securities laws; (b) the Fund has not complied with the Plan, Rule 10b5-1 or other applicable securities laws; or (c) the Fund has made misstatements in its representations or warranties in Sections 5 and 6, above;

**8.4**    receipt by Merrill Lynch of written notice from the Issuer or the Fund of: (a) the filing of a bankruptcy petition by the Issuer; (b) the closing of a merger, recapitalization, acquisition, tender or exchange offer, or other business combination or reorganization resulting in the exchange or conversion of the Shares of the Issuer into shares of a company other than the Issuer; or (c) the conversion of the Shares into rights to receive fixed amounts of cash or into debt securities and/or preferred stock (whether in whole or in part); or

**8.5**    receipt by Merrill Lynch of written notice of termination from the Fund or Issuer.

The Fund further agrees to act in good faith with regard to this Plan, including without limitation any suspension, termination and/or amendment.

## 9.    Indemnification

**9.1**    The Fund agrees to indemnify and hold harmless Merrill Lynch and its directors, officers, employees and affiliates from and against all claims, losses, damages and liabilities, including, without limitation, any legal or other expenses reasonably incurred in connection with defending or investigating any such claim , in each case, that are documented in writing, arising out of or attributable to Merrill Lynch's actions taken in compliance with the Plan, any breach by the Fund of the Plan, or any violation by the Fund of applicable federal or state laws or regulations relating to this Plan or the transactions contemplated by this Plan; provided that the Fund shall not be obligated to indemnify Merrill Lynch for any losses that arise directly from Merrill Lynch's gross negligence or willful misconduct (as determined by a court of competent jurisdiction in a final and non-appealable judgment). This indemnification shall survive termination of the plan.

**9.2**    Merrill Lynch agrees to indemnify and hold the Fund harmless from and against all claims, losses, damages and liabilities including, without limitation, any legal or other expenses reasonably

7

**Issuer Name: BigBear.ai Holdings, Inc**
**Fund Name: BBAI Ultimate Holdings, LLC**
**Symbol: BBAI**

incurred in connection with defending or investigating, any such action or claim, arising out of or attributable to Merrill Lynch's gross negligence or willful misconduct in connection with the **Plan.**

### 10.    Modification and Amendment

The Plan, including the Sales Instruction, may be modified or amended only upon (a) the written agreement of the Fund and of Merrill Lynch; (b) the receipt by Merrill Lynch of written confirmation from the Fund to the effect that the representations, warranties and covenants contained in Sections 5 and 6 above, are true as of the date of such written confirmation; and (c) the receipt by Merrill Lynch of a new Issuer Certificate or written confirmation signed by the Issuer that the representations, warranties and covenants contained in the original Issuer Certificate are true as of the date of such written confirmation.

### 11.    Counterparts

The Plan may be signed in counterparts, each of which will be an original. A signed copy of this Plan delivered by e-mail or other means of electronic transmission is deemed to have the same legal effect as delivery of an original signed copy of this Plan.

### 12.    Entire Agreement

The Plan, including the representations, warranties and covenants in Sections 5 and 6, constitutes the entire agreement between the Fund and Merrill Lynch regarding the Plan and supersedes any prior agreements or understandings regarding the Plan.

### 13.    Governing Law

This Plan will be governed by and construed in accordance with the laws of the State of New York.

**Recognition of the U.S. Special Resolution Regimes Applicable to a Non-U.S. Domiciled Client.**

In the event that Merrill Lynch becomes subject to a proceeding under a U.S. Special Resolution Regime, the transfer from Merrill Lynch of this Plan, and any interest and obligation in or under this Plan, will be effective to the same extent as the transfer would be effective under the U.S. Special Resolution Regime if this Plan, and any such interest and obligation, were governed by the laws of the United States or a state of the United States. In the event that Merrill Lynch or any BHC Act Affiliate of Merrill Lynch becomes subject to a proceeding under a U.S. Special Resolution Regime, Default Rights under this Plan that may be exercised against Merrill Lynch are permitted to be exercised to no greater extent than such Default Rights could be exercised under the U.S. Special Resolution Regime if this Plan were governed by the laws of the United States or a state of the United States. For purposes of this paragraph, "BHC Act Affiliate" has the meaning assigned to the term "affiliate" in, and shall be interpreted in accordance with, 12 U.S.C. § 1841(k); "Default Right" has the meaning assigned to that term in, and shall be interpreted in accordance with, 12 C.F.R. §§ 252.81, 47.2, 382.1, as applicable; and "U.S. Special Resolution Regime" means each of (i) the Federal Deposit Insurance Act and the regulations promulgated thereunder

8

**Issuer Name: BigBear.ai Holdings, Inc**
**Fund Name:  BBAI Ultimate Holdings, LLC**
**Symbol: BBAI**

and (ii) Title II of the Dodd-Frank Wall Street Reform and Consumer Protection Act and the regulations promulgated thereunder.

## 14.    Officer & Director Equity Service

**14.1**    The Fund authorizes Merrill Lynch to transmit transaction information via email regarding open market transactions under the Plan to: mklafter@aeroequity.com.

**14.2**    The Fund understands that best efforts will be made to transmit transaction information for open market transactions under the Plan (purchase or sale) by the close of business on the day of the purchase or sale, but no later than the open of business on the first trading day following the purchase or sale.

**14.3**    The Fund acknowledges that Merrill Lynch (a) has no obligation to confirm receipt of any emailed information by the designated contact and (b) has no responsibility or liability for filing a Form 4 with the SEC or for compliance with Section 16 of the Exchange Act.

**14.4**    If any of the above contact information changes, or the Fund would like to terminate this authorization, the Fund will promptly notify Merrill Lynch in writing.  The Fund further authorizes Merrill Lynch to transmit transaction information to a third party service provider who will make the information available to the Fund's designated representative(s) listed above.

## 15.    Notices

All notices given by the parties under the Plan will be as follows:

If to Merrill Lynch, to:

| | |
|---|---|
| Valerie Garcia Houts<br>Managing Director<br>Senior International Financial Advisor<br>Venture Services Group<br>Merrill Lynch, Pierce, Fenner & Smith Inc.<br>555 California Street, Suite 1800<br>San Francisco, CA 94104<br>T 415.955.3878<br>valerie_houts@ml.com | Henry Villeda<br>Managing Director<br>Venture Services Group<br>Merrill Lynch, Pierce, Fenner & Smith Inc.<br>2555 E. Camelback Rd.<br>Phoenix, AZ 85016<br>T 602.954.5055<br>henry_villeda@ml.com |
| Timothy Walker<br>Financial Advisor<br>Venture Services Group<br>Merrill Lynch, Pierce, Fenner & Smith Inc.<br>One Bryant Park, 28th Floor<br>New York, NY 10036<br>T 212.680.5955<br>timothy.m.walker@ml.com | Ryan Waterbury<br>Vice President, Market Supervision Manager<br>Merrill Lynch, Pierce, Fenner & Smith Inc.<br>Venture Services Group<br>555 California Street, Suite 1800<br>San Francisco, CA 94104<br>T 415.955.3824<br>ryan.waterbury@ml.com |

DocuSign Envelope ID: A38457E7-F004-43DB-B6E0-1E38AA6A3403

Issuer Name: **BigBear.ai Holdings, Inc**
Fund Name: **BBAI Ultimate Holdings, LLC**
Symbol: **BBAI**

If to the Fund, to: On File

This Sales Plan and Client Representations is established and agreed to as of the Adoption Date.

**BBAI Ultimate Holdings, LLC**

By: _____
Name: Melissa Klafter
Title: Partner, Chief Financial Officer

Merrill Lynch, Pierce, Fenner & Smith
Incorporated

Acknowledged and Agreed this____ day of
_____, 2024

By: RYAN WATERBURY

Digitally signed by RYAN WATERBURY
Date: 2024.05.14 07:59:05 -07'00'

Name: Ryan Waterbury
Title: Vice President, Market Supervision Manager

10

DocuSign Envelope ID: A38457E7-F004-43DB-B6E0-1E38AA6A3403

Issuer Name:  BigBear.ai Holdings, Inc
Fund Name:   BBAI Ultimate Holdings, LLC
Symbol: BBAI

## Annex A – Issuer Certificate

This Annex A may not be amended except in accordance with the Sales Plan, adopted as of April [7], 2024, by and between the Fund and Merrill Lynch. Terms used, but not defined herein, shall have the meanings assigned to them in the Plan.

1.    The Issuer certifies that it has approved, and retained a copy of, the Plan relating to the Shares.

2.    The Plan is consistent with Issuer's insider trading policies, and, to the best of Issuer's knowledge, there are no legal, contractual or regulatory restrictions applicable to the Fund as of the date of this representation that would prohibit the Fund from entering into the Plan or affecting any sale of Shares pursuant to the Plan.

3.    While the Plan is effective, Issuer agrees to provide notice as soon as practicable to Merrill Lynch in the event of:

   a.    the termination, expiration, or unavailability of the registration statement pursuant to which Shares will be issued to the Seller (e.g., Form S-8) and are to be sold under the Plan;

   b.    a public announcement of a public offering of securities by the Issuer;

   c.    a legal, regulatory or contractual restriction applicable to the Fund or the Fund's affiliates, including without limitation, under Regulation M, that would prohibit any sale pursuant to the Plan (other than any such restriction relating to Fund's possession or alleged possession of material nonpublic information about the Issuer or its securities) (the notice merely stating that a restriction applies to the Fund without specifying the reasons for the restriction);

   d.    the filing of a bankruptcy petition by the Issuer;

   e.    the closing of a merger, recapitalization, acquisition, tender or exchange offer, or other business combination or reorganization resulting in the exchange or conversion of the Shares of the Issuer into shares of a company other than the Issuer; or

   f.    the conversion of the Shares into rights to receive fixed amounts of cash or into debt securities and/or preferred stock (whether in whole or in part).

The notice shall be provided by e-mail to Merrill Lynch as designated in Section 15 of the Plan. Such notice shall indicate the anticipated duration of the restriction but shall not include any other information about the nature of the restriction or its applicability to Fund. In any event, the Issuer shall not communicate any material nonpublic information about Issuer or its securities to Merrill Lynch with respect to the Plan.

4.    To avoid delays in connection with transfers of securities (either book-entry or stock certificates) and settlement of transactions under the Plan, and in acknowledgment of Merrill Lynch's agreement in Section 5 of the Plan that sales of Shares under the Plan will be effected in compliance with Rule 144, the Issuer agrees that it will, immediately upon Fund's directing delivery of Shares into an account at Merrill Lynch in the name of and for the benefit of the Fund, instruct its transfer agent to process the transfer of Shares to the Fund that do not bear any legend or statement restricting its transferability to a buyer.

Dated: 5/7/2024

By: _Carolyn Blankenship_ 2024    General Counsel
[Name and title of authorized officer]

11

Issuer Name:  **BigBear.ai Holdings, Inc**
Fund Name:  **BBAI Ultimate Holdings, LLC**
Symbol: **BBAI**

### Annex B - SEC Rule 10b5-1 Sales Instruction - Annex

Sell Shares pursuant to the following table:

| Order # | Start Date* | End Date | Quantity | Limit Price |
|---|---|---|---|---|
| 1 | 8/13/2024 | 9/9/2024 | 10,000,000 | $2.95 |
| 2 | 8/13/2024 | 9/9/2024 | 10,000,000 | $3.45 |
| 3 | 8/13/2024 | 9/9/2024 | 10,000,000 | $3.95 |
| 1.001 | 9/10/2024 | 10/7/2024 | All remaining from Order 1 | $2.92 |
| 2.001 | 9/10/2024 | 10/7/2024 | All remaining from Order 2 | $3.42 |
| 3.001 | 9/10/2024 | 10/7/2024 | All remaining from Order 3 | $3.92 |
| 1.002 | 10/8/2024 | 11/4/2024 | All remaining from Order 1.001 | $2.94 |
| 2.002 | 10/8/2024 | 11/4/2024 | All remaining from Order 2.001 | $3.44 |
| 3.002 | 10/8/2024 | 11/4/2024 | All remaining from Order 3.001 | $3.94 |
| 1.003 | 11/5/2024 | 12/2/2024 | All remaining from Order 1.002 | $2.93 |
| 2.003 | 11/5/2024 | 12/2/2024 | All remaining from Order 2.002 | $3.43 |
| 3.003 | 11/5/2024 | 12/2/2024 | All remaining from Order 3.002 | $3.93 |
| 1.004 | 12/3/2024 | 12/30/2024 | All remaining from Order 1.003 | $2.95 |
| 2.004 | 12/3/2024 | 12/30/2024 | All remaining from Order 2.003 | $3.45 |
| 3.004 | 12/3/2024 | 12/30/2024 | All remaining from Order 3.003 | $3.95 |
| 1.005 | 12/31/2024 | 1/27/2025 | All remaining from Order 1.004 | $2.94 |
| 2.005 | 12/31/2024 | 1/27/2025 | All remaining from Order 2.004 | $3.44 |
| 3.005 | 12/31/2024 | 1/27/2025 | All remaining from Order 3.004 | $3.94 |
| 1.006 | 1/28/2025 | 2/24/2025 | All remaining from Order 1.005 | $2.93 |
| 2.006 | 1/28/2025 | 2/24/2025 | All remaining from Order 2.005 | $3.43 |
| 3.006 | 1/28/2025 | 2/24/2025 | All remaining from Order 3.005 | $3.93 |
| 1.007 | 2/25/2025 | 3/24/2025 | All remaining from Order 1.006 | $2.96 |
| 2.007 | 2/25/2025 | 3/24/2025 | All remaining from Order 2.006 | $3.46 |
| 3.007 | 2/25/2025 | 3/24/2025 | All remaining from Order 3.006 | $3.96 |
| 1.008 | 3/25/2025 | 4/21/2025 | All remaining from Order 1.007 | $2.95 |
| 2.008 | 3/25/2025 | 4/21/2025 | All remaining from Order 2.007 | $3.45 |
| 3.008 | 3/25/2025 | 4/21/2025 | All remaining from Order 3.007 | $3.95 |
| 1.009 | 4/22/2025 | 5/12/2025 | All remaining from Order 1.008 | $2.92 |
| 2.009 | 4/22/2025 | 5/12/2025 | All remaining from Order 2.008 | $3.42 |
| 3.009 | 4/22/2025 | 5/12/2025 | All remaining from Order 3.008 | $3.92 |
| | | Total: | 30,000,000 | |

*No trading will occur until after the later of: (1) 90 days following plan adoption or modification; or (2) two business days following the disclosure in certain periodic reports of the issuer's financial results for the fiscal quarter in which the Plan was adopted or modified (but not to exceed 120 days following plan adoption or modification), but not earlier than 8/13/2024.

12

**DocuSign**

## Certificate Of Completion

Envelope Id: A38457E7F00443DBB6E01E38AA6A3403
Subject: Complete with DocuSign: SKM_C360i24041912330.pdf
Source Envelope:

| | | |
|---|---|---|
| Document Pages: 12 | Signatures: 1 | Envelope Originator: |
| Certificate Pages: 1 | Initials: 0 | Carolyn Blankenship |
| AutoNav: Enabled | | carolyn.blankenship@bigbear.ai |
| EnvelopeId Stamping: Enabled | | IP Address: 68.129.128.170 |
| Time Zone: (UTC-05:00) Eastern Time (US & Canada) | | |

Status: Completed

## Record Tracking

| | | |
|---|---|---|
| Status: Original | Holder: Carolyn Blankenship | Location: DocuSign |
| 5/7/2024 10:47:32 AM | carolyn.blankenship@bigbear.ai | |

| Signer Events | Signature | Timestamp |
|---|---|---|
| Carolyn Blankenship | *Carolyn Blankenship* | Sent: 5/7/2024 10:48:15 AM |
| carolyn.blankenship@bigbear.ai | | Viewed: 5/7/2024 10:48:34 AM |
| General Counsel | | Signed: 5/7/2024 10:48:40 AM |
| BigBear.ai | | |
| Security Level: Email, Account Authentication (None) | Signature Adoption: Pre-selected Style Using IP Address: 68.129.128.170 | |

Electronic Record and Signature Disclosure:
   Not Offered via DocuSign

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 5/7/2024 10:48:15 AM |
| Certified Delivered | Security Checked | 5/7/2024 10:48:34 AM |
| Signing Complete | Security Checked | 5/7/2024 10:48:40 AM |
| Completed | Security Checked | 5/7/2024 10:48:40 AM |

| Payment Events | Status | Timestamps |
|---|---|---|